Opinion
COLE, J.
We here reverse orders of the Court for the East Los Angeles Judicial District of Los Angeles County dismissing 35 cases for lack of a speedy trial pursuant to Penal Code section 1382, sub *Supp. 17 division 3.[1]
 We hold that under the circumstances presented by this record the trial court abused its discretion in dismissing the actions.
“What constitutes ‘good cause’ for the delay of a criminal trial is a matter within the discretion of the trial court and its determination in the premises, absent a showing of any abuse of that discretion, will not be disturbed on appeal. . . .” (People v. McFarland (1962) 209 Cal.App.2d 772, 776 [26 Cal.Rptr. 596].) In reviewing the exercise of discretion by a lower court, an appellate court may not merely substitute its own view as to the proper decision. Judicial discretion is abused, however, not only when a trial court arbitrarily exercises “a whimsical, uncontrolled power” (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4325), but also when legal principles and policies appropriate to the particular matter at issue are departed from. (People v. Russel (1968) 69 Cal.2d 187, 194-195 [70 Cal.Rptr. 210, 443 P.2d 794].)[2]
A comparison of the principles to be applied in considering a motion to dismiss under section 1382, subdivision 3, with the facts of the instant cases, convinces us that on the record presented the actions should not have been dismissed.[3]
Facts
Each of the 35 cases was separately filed in the trial court, and each has a slightly different procedural history. They share the common fact that each of them was placed on a “trailing” status due to a congested trial calendar and was ordered to trail on a day-to-day basis. After the cases had trailed for 10 days, defense motions to dismiss based upon section 1382, subdivision 3, were made.[4] The motions were heard on January *Supp. 18 4, 1974, and granted on January 8, 1974. All four judges of the East Los Angeles Judicial District and the commissioner appointed in that district presented declarations or affidavits as did the chief deputy clerk of the court. In addition, the three judges not hearing the motion and a public defender testified. After recessing for decision in order to examine the docket sheets of the many cases involved in the motions to dismiss,[5] the court announced its findings and decision in open session. The findings were thereafter incorporated into the docket of each of the cases.[6] The essence of the findings is that during the relevant time periods, the judges and the commissioner were involved exclusively in criminal matters and that the Judicial Council had been contacted but was unable to assist the court. These findings are amply supported. A declaration of the chief deputy clerk of the trial court established that since October 3, 1973, all of the judges appointed to the court and two judges who were assigned for brief periods to the court by the Chairman of the Judicial Council were engaged exclusively in criminal matters except when on authorized vacation or sick leave. The clerk’s declaration also indicated that those civil matters which had been tried were heard by judges pro tern, appointed pursuant to *Supp. 19 stipulations of the parties. The presiding judge of the trial court testified that he contacted the Judicial Council on four separate occasions in order to procure assistance from it.
In answering questions of counsel, the trial judge stated that the press of business, the inability or unwillingness of the Judicial Council to provide additional judges, and the inability or unwillingness or reluctance of the parties to reach “amicable plea bargain[s]” “taken in total” were the bases for the decision.
Discussion
The last mentioned factor has no role in the consideration of whether or not a speedy trial has been denied to a criminal defendant. While our Supreme Court has unanimously agreed that plea bargains play a vital part in our system of criminal procedure (People v. West (1970) 3 Cal.3d 595, 613 [91 Cal.Rptr. 385, 477 P.2d 409]), they are consensual matters and of course the consent must be voluntarily given by all parties. Accordingly, the court’s formal finding No. 3 and the court’s statement that the party’s inability, unwillingness or reluctance to agree upon a plea bargain was one of the bases of its decision, must be disregarded.
We are left then with the fact that the court’s calendar was congested, that the judges and commissioner had given exclusive attention to criminal matters and that the Judicial Council had been unable to offer assistancé.
Section 1382, subdivision 3, provides that unless good cause to the contrary is shown, the court must order a misdemeanor case dismissed if it is set for trial on a date beyond the time period prescribed for trial in that section with the consent or at the request of the defendant and the defendant is not brought to trial on that date or within 10 days thereafter.
The congested condition of a court’s calendar constitutes good cause within the meaning of the section. (In re Lopez (1952) 39 Cal.2d 118, 120 [245 P.2d 1].) The prosecution has the burden of showing that this condition exists. (People v. Tahtinen (1958) 50 Cal.2d 127, 132 [323 P.2d 442]; People v. Bryant (1970) 5 Cal.App 3d 563, 571 [85 Cal.Rptr. 388].) To sustain its burden, the prosecution must not only show court congestion, there must also be a showing that civil matters have not been given precedence over the trailing criminal matters (e.g., Dearth v. Superior Court (1940) 40 Cal.App.2d 56, 59 [104 P.2d 376]; People v. Echols (1954) 125 Cal.App.2d 810, 815, 816 [271 P.2d 595]), and a showing that, pursuant to section 1050, notification that the condition of its calendar may require dismissal of an action has been made by the court to the Chairman of the *Supp. 20 Judicial Council. (Hankla v. Municipal Court (1972) 26 Cal.App.3d 342, 364 [102 Cal.Rptr. 896]; Herrick v. Municipal Court (1957) 151 Cal.App.2d 804, 807 [312 P.2d 264].)
It is clear that the People have met their burden as to these factors. Since they are the only other bases for the trial court’s decision, there simply was no evidence upon which the court could act to justify a dismissal. The motions therefore should not have been granted.
It is true, however, that while delay in violation of section 1382 time limits may be excused where good cause is shown, that delay must not be unreasonable. (In re Lopez, supra, 39 Cal.2d 118, 120.) The court made no finding on this issue. Reasonableness is, generally speaking, a question of fact for the trial court. All of the circumstances involved in each case including its own particularized history and the time when the court will be able to try the case in the future, bear on the question of reasonableness. (Cf. Jones v. Superior Court (1970) 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10], dealing with the reasonableness of preprosecution delay.) On remand, these factors should be considered in addition to those discussed above which are supported.
Defendants suggest that faulty judicial administration contributed to the delay. They quarrel with the timing of the notifications to the Judicial Council by the presiding judge of the East Los Angeles Municipal Court, stating that the judge failed to notify the Judicial Council “at the most crucial times.” The record indicates that on October 5, 1973, the presiding judge advised the Judicial Council of the backlog problem in the East Los Angeles Judicial District. The backlog problem of that court was evidently a continuing one and from time to time the Judicial Council was readvised of its existence. Two judges were assigned for brief periods to the court. The Judicial Council was unable to provide other assistance. Defendants cannot require that the presiding judge continually call the Judicial Council when the latter has clearly been made aware of the court’s predicament.
Defendants also argue, citing cases such as Dearth v. Superior Court (1940) supra, 40 Cal.App.2d 56 and Herrick v. Municipal Court (1957) supra, 151 Cal.App.2d 804, that the “simple excuse that there are too many criminal cases and a shortage of judges to try them is uniformly rejected.” Each of those cases and each of the others relied upon by defendants for this proposition involved a court with two or more judges, some of whom were trying civil matters at a time when criminal cases were being continued. They are thus clearly distinguishable from the facts of the instant cases.
*Supp. 21 Defendants suggest that the People have failed to show that the instant cases could not have been transferred to other judicial districts for trial. We are not aware of any statutory provision or authorization for such a transfer and none has been suggested to us.[7]
It was also established at the hearing that some criminal cases, apparently Vehicle Code violations, filed in the trial court after the pending cases here on appeal were filed, were tried on early dates, thus coming ahead of the instant cases. Since the Vehicle Code violations are themselves criminal matters, the fact that they were given precedence does not by itself constitute reason for dismissing the present cases. (In re Lopez, supra, 39 Cal.2d 118, 119.)
In granting the motion to dismiss pursuant to section 1382, subdivision 3, the court also stated that it was dismissing the actions on its own motion pursuant to section 1385 and that its decision was based, as well, upon the state and federal due process clauses. Under the circumstances of this case and given the existence of the good cause which we hold exists as to the delay, these purported additional bases for dismissal have no separate validity.
The orders of dismissal are reversed.
Katz, P. J., and Holmes, J., concurred.

All statutory references hereafter are to the Penal Code unless otherwise noted.

There is no contention here that the trial court acted in a whimsical, uncontrolled or arbitrary manner. Rather, our review focuses on the legal principles and policies to be considered in determining whether a speedy trial has been denied to a defendant in a criminal case.

As to seven of the cases involved herein, the People claim that additional reasons for a reversal exist and as to one of the seven (People v. Cervates) the defendant concedes that for reasons unrelated to the issues discussed herein, it was error for the case to be dismissed. Under the circumstances, we do not reach any specific contentions relating only to one or more of these seven cases.

The cases commenced to trail on the following dates:

Date No. of Cases Date No. of Cases

Oct. 24, 1973 1 Dec. 5, 1973 2
Oct. 28, 1973 1 Dec. 6, 1973 1
Nov. 21, 1973 4 Dec. 12, 1973 3
Nov. 28, 1973 13 Dec. 13, 1973 1
Nov. 29, 1973 2 Dec. 19, 1973 6
Dec. 4, 1973 1

Motions were made and granted in more than 35 cases but appeals were not taken in all of them.

Findings of Fact
“1. There were approximately 71 trailing criminal jury trials on December 31, 1973. There were no trailing criminal cases or the number of trailing cases were negligible on or prior to August 1973, despite the fact there were substantially the same volume of criminal cases. This is substantially attributable to the change in personnel in the office of the District Attorney.
“2. During the months of November and December 1973, there were approximately 30 days of authorized but unfilled court absences due to vacations, illnesses (a minor item), and assignments to other courts by the Judicial Council at a time the Judicial Council was previously advised of the condition of this court’s calendar by the presiding judge (Judge Rikalo). During an entire week, two of. the four Judges on this Court were absent without replacement.
“a. The Judicial Council in response to Judge Rikalo’s request for assistance indicated its inability to assist this court.
“b. Good Cause for delay is not found.
“3. Every effort was made by each of the divisions to encourage plea bargaining as a means of alleviating the problem. To this end, Mr. Joseph Busch, the district attorney of this County was contacted by the presiding judge (Judge Rikalo) regarding the pending motions to dismiss. No significant results were noted.
“4. All judges and the commissioner were involved exclusively in criminal matters.
“5. Many criminal cases were assigned and tried on the scheduled trial date while cases on the trailing criminal trial list were ignored.
“6. Eighteen jury trials were handled in the months of November and December 1973.
“7. The policy of requiring each defendant on the trailing calendar to remain in Court until a division is open for assignment or the placing of defendants on an hour’s call proved unworkable from the standpoint of both the People as well as the defendants.” (Typographical errors have been corrected.)

Section 1034 provides for changes of venue if there is a reasonable likelihood that a fair and impartial trial cannot be had in the judicial district in question or when the jury panels have been exhausted so that it is impossible to secure a jury to try the case in the judicial district in which it is pending. Section 1035 provides for change of venue on motion of the prosecution if it appears that the change is for the convenience of all parties and the defendant and his attorney consent in writing to the transfer. Section 1462.2 provides for transfer where the action has not been commenced in the proper court. None of these provisions apply in the cases at bench.