Opinion
BERNSTEIN, Acting P. J.
We have consolidated these cases on appeal. The People are appealing the trial court’s order dismissing both cases under Penal Code section 1385. At the time of the dismissals both cases were within the 10-day-time period provided by Penal Code section 1382. There was no showing that the cases could not be tried within the Penal Code section 1382 time limits (see People v. Morrow (1978) 87 Cal.App.3d Supp. *Supp. 10 18, 24-25 [151 Cal.Rptr. 281]). The People contend that pursuant to Malengo v. Municipal Court (1961) 56 Cal.2d 813 [17 Cal.Rptr. 10, 366 P.2d 453]; People v. Kessel (1976) 61 Cal.App.3d 322 [132 Cal.Rptr. 126]; People v. Flores (1978) 90 Cal.App.3d Supp. 1 [152 Cal.Rptr. 896]; People v. Hernandez (1979) 97 Cal.App.3d 451 [158 Cal.Rptr. 742]; People v. Arnold (1980) 105 Cal.App.3d 456 [164 Cal.Rptr. 367]; and People v. Rubaum (1980) 110 Cal.App.3d 930 [168 Cal.Rptr. 291], the People are automatically entitled to have a case trail within the 10-day-grace period provided by Penal Code section 1382; they are not required to show good cause. We find the cases at bench distinguishable from those cited.
In the cases at bench, the following occurred:
Torres
Torres was charged with violating Vehicle Code section 23152, subdivisions (a) and (b) (driving without a license and driving with a suspended or revoked license and with having a prior driving under the influence conviction). He was in effect arraigned on September 15, 1982. He was represented by private counsel and was not in custody. On May 10, 1983, the trial was set for July 5, 1983. He waived time until July 5, 1983.
On July 5, 1983, Torres’ case was called for trial. His counsel announced ready. The prosecutor requested that the case trail within the statutory time period. Defense counsel objected, stating that his schedule was such that should this be done he would have a conflict as to other scheduled matters in which he was appearing. He stated that he was ready for trial, had his witnesses subpoenaed and would stipulate to all the elements of the crime, including that the defendant had a .20 blood-alcohol percentage except he would not stipulate as to the issue of whether the defendant had been driving. From the ensuing discussions it became apparent that the People had all their witnesses available. However the deputy district attorney refused to announce ready. The deputy gave various reasons for not being able to proceed; i.e. only one of the two officers she intended to call was then present in the courtroom; however, she stated that she had received word that the other officer would be present in court later that morning. She also stated that she had not had time to interview the witnesses or prepare the case. However, later that day she stated to the trial judge, “I am more or less the rotating trial deputy. When something comes up, I get put in the court and tend to do them at a moment’s notice.” The trial judge then excused the deputy for 10 minutes to prepare for the case. Later that same session, he called the case again. The deputy again announced that the People were not ready to proceed in the case and refused to participate in the proceedings. In the court minutes in both cases the trial judge noted the *Supp. 11 following had occurred: “This Deputy District Attorney also told this Court in the back hall by chambers on Tuesday July 5, 1983, with others present, on the 10:30 A.M. break, prior to any dismissals, that she had just transfered [jfc] from a ‘much tougher’ District Attorney’s office and that ‘part of (her) training’ was to always drag things out till the last possible moment so that even if the case was lost or dismissed, the defendants paid the price through the hassle of multiple appearances and the expenses of private counsel.” The reporter’s transcript shows that the trial judge dismissed the case for “lack of prosecution. No good cause being shown.”
Ramos
Ramos was charged with violating Vehicle Code section 23152, subdivisions (a) and (b). He was arraigned on April 29, 1983. He was not in custody and appeared in propria persona. On May 12, 1983, the case was set for trial on June 30, 1983. There were time waivers until June 30, 1983. On June 30, 1983, the case was trailed to July 5, 1983. On July 5, 1983, the case was called. Defendant announced ready. The same deputy district attorney appearing in People v. Torres announced that the People anticipated they would be ready to begin the case the next day, July 6th. The defendant agreed to stipulate to the blood test results, thereby eliminating the need for the People to call witnesses as to this issue. There was some discussion as to whether the People were ready; the deputy finally said she would be able to start the proceeding on the 5th and have her witnesses on the 6th. However, she requested a new jury panel, as the one present had heard some of the discussions and were in her opinion prejudiced thereby. The trial judge denied her request. She then announced that the People were not ready to proceed on the case and requested that the case trail until the next day. The matter was put over to the 6th. On the 6th the People filed a Code of Civil Procedure section 170.6 motion to disqualify the judge. This motion was properly denied as untimely. The deputy then stated that the People were not announcing ready, and requested that the case be trailed within the Penal Code section 1382 ten-day time period. The deputy announced that she would not participate in any further proceedings. There was no indication that the witnesses were not available. The deputy refused to offer a reason for not being able to proceed; her position was that the trial judge was required to trail the case. The trial judge then dismissed the case for lack of prosecution.
In these cases the trial judge prepared an extensive minute order detailing his reasons for the dismissals.[1] He found that the requests for continuances *Supp. 12 were not based upon the need to secure unavailable witnesses, but rather were an attempt by the district attorney to “to control the court’s calendar with blatant disregard and a total lack of courtesy for the needs of the defense or the Court.” He also found that there was no specific reason offered by the People for their lack of readiness to try the case; and “[i]n both cases the defense wished to proceed with the trial on the date set, stated prejudice as to increased expense and lost time from indefinite trailing, and did not consent to a mistrial.”
It is clear from our review of the record that there was no showing that the People were not in fact ready to proceed to trial but rather that they chose not to do so.
In the cases at bench the trial judge found that the deputy district attorney’s request for a continuance was not based upon any inability to in fact proceed to trial in the cases. We find that finding to be supported by substantial evidence.
The cases cited by appellant stand for the proposition that a trial court may not under Penal Code section 1385 dismiss a case because the People are unable to proceed due to some factor which prevents them from being ready to in fact try the case; such as the unavailability of a witness (Malengo v. Municipal Court, supra, 56 Cal.2d 813, 814; People v. Rubaum, supra, 110 Cal.App.3d 930, 932; People v. Arnold, supra, 105 Cal.App.3d 456, 458; People v. Hernandez, supra, 97 Cal.App.3d 451, 453; People v. Flores, supra, 90 Cal.App.3d Supp. 1, 6) or because the trial deputy was not prepared to try the case (People v. Kessel, supra, 61 Cal.App.3d 322, 324). None of these cases involved the situation where the People were capable of proceeding to trial, but chose not to do so in order to discipline the court. We therefore find these cases distinguishable from the case at bench and do not consider them dispositive as to the dismissals in People v. Torres and People v. Ramos. Penal Code section 1385 provides: “The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading.”
We note that, “[t]he trial court’s discretion to dismiss pursuant to section 1385 is very broad [citations], although subject to the requirement that the reasons for the court’s decision be such as ‘would motivate a reasonable judge. ’ [Citation.] On the other hand, the furtherance of justice requires that justice be done to the People’s interests as well as to the defendant’s.” (People v. Borousk (1972) 24 Cal.App.3d 147, 163 [100 Cal.Rptr. 867].) There must be “a balancing of society’s interest against that of the defend *Supp. 13 ant.” (People v. McAlonan (1972) 22 Cal.App.3d 982, 986-987 [99 Cal.Rptr. 733].) There must also be a showing of detriment to the defendant. (People v. Orin (1975) 13 Cal.3d 937, 947 [120 Cal.Rptr. 65, 533 P.2d 193].) In the instant cases there was a showing of detriment to the defendants as evidenced by the trial court’s findings in this regard.
Clearly what was at issue here was who was going to run the courtroom and set its calendar—the judge or the prosecutor. The judge has the inherent power to exercise reasonable control over the proceedings before the court. (Cooper v. Superior Court (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274]; Hays v. Superior Court (1940) 16 Cal.2d 260, 264 [105 P.2d 975]; Mowrer v. Superior Court (1969) 3 Cal.App.3d 223, 230 [83 Cal.Rptr. 125].), and it is the judge who is charged with administering the court calendar, including setting the order and time at which cases are to be tried. (Cal. Rules of Court, rule 533, see rule 248 and Pen. Code, §§ 1048, 1050.) In the case at bench the record amply demonstrates that the prosecutor was attempting to dictate to the judge what cases, if any, should be tried in his courtroom and in what order.
It was never the intent of the cases cited by the People to shift the control of the calendar from the court to the prosecutor. The instant case is an example of a flagrant abuse of the holding of Rubaum, supra, 110 Cal.App.3d 930, and other established case law which places control of the courtroom in the hands of the court. Accordingly, when a request for a continuance is based solely upon an attempt by the prosecutor to usurp the inherent right of the court to control the courtroom—such a continuance is properly denied. In the instant case the trial court was well within its discretion in refusing to allow the challenge to its authority to administer its calendar and allocate its time with a view to the efficient administration of justice.
The orders of dismissal are affirmed.
Cooperman, J., and Shabo, J., concurred.
A petition for a rehearing was denied July 26, 1984.
*Supp. 14 Appendix A
Municipal Court of the Citrus Judicial District County of Los Angeles, State of California
People of the State of California, vs. Richard E. Torres Plaintiff, Defendant.
People of the State of California, vs. Daniel M. Ramos Plaintiff, Defendant.
Case No. M221935
Case No. M232174
Minute Order
Re: Dismissals (Penal Code Section 1385 and Section 1050 et seq.)
Penal Code Section 1385 requires the court to state in the minutes the reason for a dismissal. Penal Code Section 1050, subdivision (e) requires that the facts proven which require a continuance shall be entered upon minutes of the court.
In both of the above cases this court denied a People’s motion to trail or to continue these cases. After swearing a jury panel and partially selecting a jury in both cases, this court dismissed both cases under Penal Code Section 1385 for lack of prosecution when the Prosecution refused to call any witnesses in behalf of the People or to participate in jury selection.
A summary of the main reasons this court took the drastic action of dismissal is as follows:
(1) This court found that the District Attorney was totally refusing to comply with the provisions of Penal Code Section 1050 and Section 1050.5.
(2) This Court found that the District Attorney was deliberately abusing the 10-day grace in Penal Code Section 1382.
(3) This Court felt that to implement the legislative (and constitutional) intent of Penal Code Section 1050 et seq., a firmer penalty than that provided by Penal Code Section 1050.5 was required for the good of all society and for the orderly judicial administration of the courts.
Some of the factors relied upon by this court in making these decisions are as follows:
(1) The Court had before it the regularly assigned Deputy District Attorney for Division 8 who had been assigned to that Division for several months.
(2) The cases set for jury trial had been set for several weeks and/or months prior.
(3) No specific reason was offered by the People for their lack of readiness or to support the People’s motions despite repeated requests of the People to offer a specific reason.
(4) When this court indicated that some of the general reasons offered by the People were not believed or unfounded, the People continued to refuse to offer any specifics or verification whatsoever.
(5) No other dates were specified by the People as to when they felt that they could be or would be ready to proceed to trial.
(6) In view of the stipulations offered by the defense in both cases, after a review of the police reports in the files, and upon understanding from the statements of the People as to which witnesses they would admit were actually available, this court found that the District Attorney’s motions to continue the trial were not based upon an unavailability of any material witnesses.
*Supp. 15 (7) As expressly stated by the People, the reason in the Torres case was for “tactical” reasons.1 As expressely [szc] stated in the Ramos case, the People’s reasons were, first, to insure a continuance necessary for witnesses available the following day (which was granted), second, to insure that the court provided a different jury panel (which was denied), and, third, to obtain a trial before a different judge (untimely motion not entertained).
(8) In this second case (Ramos), the District Attorney had granted an early release of the witnesses without court permission. In the first case, the Prosecution refused to disclose the name of the “missing” witness to the court and the defense as required by normal discovery and Penal Code Section 1050 et seq.1
(9) Other general excuses included statements by the prosecution that she had not read all the files completely and that she had not personally talked to all the witnesses in the cases.1
(10) The Deputy District Attorney also offered that the Pacheco case (#235241), set for the following day, was an “in-custody” matter in which time to start a trial would run if not started by Thursday. Yet on the day set for that trial (Weds.) the People declared “not ready” and trailing status was granted. (The Defendants were actually out of custody, and it was settled on the last day without a trial.)
(11) Another reason offered by the People was that this court was assigned for only 1 week and, therefore, could not finish any jury trial in that time period (despite the open ended nature of the Judicial Council assignments).
(12) The cases involved were more than 1 year old on the date set for trial.
(13) Of the 13 or so cases set for trial in Division 8 during the week of July 15, (trial days being 5, 6, and 7th), including those in which this court was disqualified, the People declared “ready” only in the single case in which this Court was disqualified by the defense after refusing to accept a plea bargain. In very few of these cases did the People offer any specific reason as to lack of readiness. In those cases where some valid reason appeared, this court uniformly granted the People’s motions to continue or trail. (In order to illustrate the overall lack of due diligence in terms of trial preparation on the part of the People for all matters set in Division 8 this week, this Court ordered that the appellate transcripts include all aspects of the jury trials and readiness claims for July 5 and 6 in Division 8.)
(14) In both cases the defense wished to proceed with the trial on the date set, stated prejudice as to increased expense and lost time from indefinite trailing, and did not consent to a mistrial.
(15) This Court found that the District Attorney was actually attempting to control the court’s calendar with blatant disregard and a total lack of courtesy for the needs of the defense or the Court.
Legal Analysis:
The People cited People vs Arnold (1980) [105 Cal.App.3d 456 (164 Cal.Rptr. 367)] for the proposition that the grace period provided for in Penal Code Section 1382 can be had, and continuances automatically granted for the People without stating or showing any specific reason, good cause, or need whatsoever for a continuance or trailing within that 10 day grace period.
A review of the Arnold case (and People v Kessel (1976) 61 CA3d 322 [132 Cal.Rptr. 126] cited by the Appellate Court) shows that the proposition is stated only as dicta. In fact, both of the cases were more serious felony prosecutions where the People actually offered specific reasons for their need to continue their cases. There was absolutely no analysis in those cases of the interplay between the provisions of Penal Code Sections 1382 and 1050 et seq.
Such analysis does exist briefly in the Supreme Court case relied upon by the court in Kessel (Malergo v Municipal Court (1961) 56 CAL2d 813 [17 Cal.Rptr. 10, 366 P.2d 453]). In that case a misdemeanor prosecution was involved, but the prosecution offered a specific reason, verified by telephone, as to the need for a continuance (1959 versions of Sections 1050 and 1382 were involved).
Such facts are different than here, where no attempt was even made to informally comply with Penal Code Section 1050 et seq. and, in fact, all material witnesses appeared to be available. To hold the defense to a higher standard on requests for continuances (See, People v Sandoval (1977) 70 CA3d 73 [138 Cal.Rptr. 609, 99 A.L.R.3d 765]) than the prosecution would render meaningless the provisions and legislative intent of Penal Code Section 1050, *Supp. 16 be unfair to defendants, allow prosecutors to rule the court calendars, create further congestion and delayed justice, cause increased hardship on witnesses, jurors, parties, etc., and increased costs to all.
For all of the above reasons the dismissals were made, and Deputy District Attorney, Mary Ganahl is hereby fined $100 under Penal Code Section 1050.5. Execution on the fines is stayed pending final disposition of any appeals.
Clerk is directed to enter this minute order on the dockets of the above cases and serve all counsel and parties with copies.
/s/ Vincent T. Lechowick
Vincent T. Lechowick
Assigned Judge
'On Thursday, July 7, 1983, Deputy District Attorney Mary Ganahl finally admitted off the record at approximately noon, in Division 8, with this Court, the clerk, reporter, and bailiff present, that the “missing” witness in the Torres case was the doctor because, despite defense stipulations, she anticipated using the doctor in “rebuttal only” as a “surprise” to the defense attorney with whom she had had many battles before. She also stated that she hoped the doctor would be available “around July 13, 1983.” This Deputy District Attorney also told this Court in the back hall by chambers on Tuesday July 5, 1983, with others present, on the 10:30A.M. break, prior to any dismissals, that she had just transfered [sic] from a “much tougher” District Attorney’s office and that “part of (her) training” was to always drag things out till the last possible moment so that even if the case was lost or dismissed, the defendants paid the price through the hassle of multiple appearances and the expenses of private counsel.
*Supp. 17 Appendix B
Municipal Court of the Citrus Judicial District County of Los Angeles, State of California
People of the State of California, Plaintiff, VS. Richard E. Torres Defendant.
People of the State of California, Plaintiff, VS. Daniel M. Ramos, Defendant.
Case No. M232174
Addition to Footnote #1 of Minute Order Re: Dismissals (Penal Code Section 1385 and Section 1050 et seq.)
In the off the record conversation of [July] 7, 1983, at approximately noon (above), the prosecutor stated further that she had a personal, “firm, unbroken policy” which she stated was the reason she had “moved up so quickly” and successfully through the ranks in the District Attorney’s Office. That policy was “never to declare ‘ready’ in any case unless she had first personally interviewed the witnesses.”
That brief explanation of one of the prosecutor’s personal policies is perhaps also the best explanation for the conflicts of opinion between the prosecutor and the court during the past week. This court is of the view that such preparation is highly desired but should be completed prior to the date of trial or during trial.
Dictated: July 8, 1983
Typed and signed: July 12, 1983
Is/ Vincent T. Lecho wick
Vincent T. Lecho wick,
Assigned Judge
The clerk is directed to enter this addition to the minute order on the dockets with copies to all counsel and pro per.
July 12, 1983
/s/ Vincent T. Lecho wick Vincent T. Lechowick Assigned Judge

The minute order prepared by the trial judge in these cases, and his addition to that order, are set forth as appendixes A and B to this opinion.