Opinion
THE COURT.*
This court, having vacated its October 17, 2007, judgments in conformity with the writ of review issued by the Court of Appeal, Fourth *Supp. 4 District, Division Two, and having heard the arguments of the parties, now issues a new judgment affirming the trial court’s dismissal of the above referenced cases.[1]
During oral argument on July 11, 2008, appellant suggested that the two cases be consolidated to avoid issuing separate judgments. Because both cases involve identical facts, issues, and a common settled statement, we hereby order that the two appeals be consolidated for the purposes of issuing a single judgment.
PROCEDURAL HISTORY
Appellant (hereinafter the People) challenges the trial court’s dismissal of two misdemeanor prosecutions in which the respondents were not brought to trial within the statutory time limits of Penal Code section 1382.[2]
Respondent Duane Steven Cole was charged with unlawful dumping (§ 374.3, subd. (h)(1)); respondent Jose Maria Gurdian was charged with vandalism with damage less than four hundred dollars and violation of his written promise to appear. (§§ 594, subd. (b)(2)(A), 853.7.)
Both cases were dismissed on January 26, 2007, the last day on which respondents could have been brought to trial pursuant to section 1382. The dismissals occurred at approximately 3:40 p.m. on a Friday, after the trial court found no courtrooms available for trial and no good cause to continue the matters beyond the statutory time limits.
Both appeals were assigned to be heard by this panel after the judges of the Appellate Division of the Riverside County Superior Court disqualified themselves.
CONTENTIONS ON APPEAL
The People contend that the trial court abused its discretion in dismissing both cases for the following reasons:
*Supp. 5 (1) It improperly dismissed the cases although neither defendant had moved for dismissal.
(2) It dismissed the cases prior to the expiration of the statutory period.
(3) It dismissed the cases even though criminal courtrooms were available to try both cases.
(4) It dismissed the cases without properly considering the availability of civil courtrooms to handle the trials, thereby violating section 1050, subdivision (a), which requires that criminal cases be given precedence over civil matters.
(5) Finally, even if no civil or criminal courtrooms were available, the trial court abused its discretion by failing to find good cause to continue both cases beyond the statutory limit of section 1382.
PROCEEDINGS BEFORE THE TRIAL COURT
Both cases were dismissed at the same time by the same judge on identical grounds and based on identical facts. The dismissal hearing in People v. Cole was held first, with the result that the reporter’s transcript of the Cole dismissal proceeding contains all facts relevant to both cases. Consequently, when the second case (People v. Gurdian) was called, the parties stipulated that the oral proceedings in the Cole dismissal proceeding would apply to the dismissal hearing in the Gurdian case.[3]
The proceedings in People v. Cole commenced at approximately 3:10 p.m. on Friday, January 26, 2007, in the Riverside Hall of Justice.[4] Both parties answered ready for trial, and the defense objected to any further delay.
The trial court stated that although 30 jurors were available and standing by, no courtrooms were available to try the cases. The deputy district attorney responded that he believed three criminal courtrooms in the Southwest Justice Center were available for trial of both misdemeanor cases, which were believed to have short time estimates. He identified the available judges and departments and stated that each courtroom had a trailing felony case assigned to it. Each felony trial was scheduled to begin the next com! day (Monday), which was day seven of 10 in two of the felony cases and day eight of 10 in the third. The deputy district attorney identified each felony *Supp. 6 case for the trial court by case name and number.[5] He told the court that a prosecutor could be in any of those three courtrooms within 10 minutes to start Evidence Code section 402 motions, and he asserted that if either defendant or his counsel was unable to make it to the Southwest Justice Center in time to start trial that day, the People would take the position that the defense was not ready. The trial court noted that the Southwest Justice Center was 40 to 45 miles away, which neither side disputed.[6] The People contended that because none of the three felony cases was at the last possible day for trial (day 10 of 10), all three courtrooms were available to start a misdemeanor trial by the end of the current court day.
The trial court then stated that it had previously had discussions with the master calendar judge in the Southwest Justice Center and the appropriate judges in Indio.[7] These discussions concerned the extent to which the judges would send cases back and forth between the courthouses. The judges were concerned that waiting until the last possible day for trial on felony cases would risk dismissals of felonies under section 1382. As a result, they decided not to wait until day 10 of 10 to start felony trials, if the circumstances were such that they lacked confidence that a particular felony case could actually get to trial by the tenth day. Consequently, the judges had determined that it would be prudent to commence felony trials before the last possible day, even if this would risk the dismissal of a misdemeanor case for lack of section 1382 compliance. The court stated that its judgment in this matter was based on the fact that the situation was not a temporary or occasional emergency which could be easily resolved, but a continuing problem of constantly rising caseloads.[8]
The deputy district attorney then mentioned that a visiting judge would be arriving the next court day, Monday (January 29, 2007), and could take one of the felony cases. The trial court responded that although this alternative may have been practical earlier in the day, it was impractical at 3:00 p.m. on a Friday when the courts “available” to commence the misdemeanor trials were 40 to 45 miles away. In addition, the court stated that Monday (January *Supp. 7 29, 2007) was the last day for three or four felony cases for which he had no available courtrooms, and he intended to use the visiting judge for one of those cases.
At this point, the deputy district attorney asked permission to make a record of an unreported chambers conference from earlier in the day, but the trial court denied the request on the ground that the chambers conference was irrelevant because the Southwest Justice Center had not been discussed. The trial court also struck the People’s declaration, which attempted to summarize what had occurred at that conference. The deputy district attorney then suggested that in Southwest Justice Center the drug court judge could hear a misdemeanor trial, and a temporary judge could preside over drug court on Monday. The trial court declined that suggestion, stating that temporary judges could not solve the problem of the “rising tide.”
The discussion then turned to the availability of civil courtrooms. The People stated that they opposed the dismissal of any criminal cases when alternatives were available, citing section 1050, subdivision (a), which mandates that criminal cases be given precedence over any civil matters. The People asserted that in department B-2, Judge Hinman had finished with his morning calendar and was available both immediately and on Monday. However, the trial judge responded that he had been informed that Judge Hinman was unavailable, and he had accepted that representation.
The deputy district attorney inquired if the court had notified the Chair of the Judicial Council pursuant to section 1050, subdivision (j), that it might need to dismiss a criminal action based on section 1382, and he demanded to know when the court had done so. The trial court stated that it was aware of and had met its responsibilities under the code and declined to be “cross-examined by the People.” The trial judge stated that the court had had a shortage of judicial officers since 1999, that “this emergency” had occurred on a weekly basis, and that he had kept the presiding judge apprised of this emergency on a weekly basis. He pointed out that in 15 of the last 18 weeks, cases had been sent out for trial on day 10 of 10, and every week he had informed the presiding judge that a dismissal might occur, although until the present case, it never had. In addition, the trial judge stated that he had apprised the supervising judges of the Southwest Justice Center and Indio of the situation on a weekly basis, indicating that the judges “have a drill” in which they frequently “double-check,” with the result that the trial judge was confident that everything which could have been done had been done.
The People then inquired whether any judges from criminal courts were away from the court for training, and if so, whether they had been called back. The trial judge responded that two criminal judges were away for *Supp. 8 training, but because one of them had recessed a criminal trial to attend the training, it would not help to call that judge back. The other judge had a master calendar assignment, so calling that judge back would not help either. The trial court did not know if any noncriminal court judges were away at training.
Next, the deputy district attorney inquired if the court had made any effort to have temporary judges take over any of the calendar courts to permit a calendar judge to hear one of the misdemeanor trials. The trial judge indicated that the domestic violence calendar judge was unavailable for the entire week, but the court had been unsuccessful in obtaining temporary judges to fill that vacancy. This required other judges to take time off from their regular duties to cover the domestic violence calendar on an hour-by-hour basis. When the prosecutor specifically inquired about having a temporary judge cover any calendar for the next court day, the trial judge indicated that even if a temporary judge were available to cover such a calendar, he would not “go down that road” because the chronic nature of the problem would result in temporary judges calling the calendar in every department, a situation that would not benefit the public.
The deputy district attorney then asked the court to assign the two misdemeanor trials to family law and probate judges, based on the requirement in section 1050, subdivision (a), that criminal cases take precedence over civil matters. The trial judge stated that he had discussed this matter with the presiding judge, whose interpretation of section 1050, subdivision (a), included traditional civil lawsuits, but not family law, probate, juvenile traffic or small claims matters. The trial judge indicated that he agreed with the presiding judge’s interpretation.
In addition, the trial judge pointed out that in compliance with section 1050, subdivision (a), Riverside County was no longer hearing any traditional civil trials. Two or three years earlier, the court would occasionally close down a civil department to meet an emergency, but the rising backlog in criminal cases had completely eliminated all civil trials. However, this did not solve the problem, and the criminal backlog was continuing to grow at an even faster rate. Separate from its legal interpretation of the term “civil,” the trial court stated its opinion that the work done by the family, probate, traffic and juvenile judges was of great importance to the community and its citizens. Because of the criminal backlog and the fact that all traditional civil courtrooms were now being devoted to criminal cases, if the court were to construe “civil” to include family law, probate, juvenile and traffic matters, the departments doing this important work would be completely eliminated. The trial court found that this approach would be detrimental to the citizens of the community. The court stressed that the lack of sufficient courtrooms was not a temporary emergency, but a constant problem that had been growing for years.
*Supp. 9 In response, the People clarified their position: Criminal cases should take precedence over probate, family law, small claims and traffic matters, but not over juvenile matters.
The People then inquired if the presiding judge had been asked to hear a trial, because he had been hearing a habeas corpus matter, which had been continued; the People suggested that before dismissing any cases, the trial court should inquire if the presiding judge was available. The trial judge responded that he and the presiding judge had discussed this issue and were in full agreement that the presiding judge’s duties, which involve administrative matters critical to the successful functioning of the court, should not be interpreted as civil matters for the purposes of section 1050, subdivision (a).
Next, the prosecutor inquired about whether any attempts had been made to bring in retired judges to hear the two cases. The trial judge responded that the superior court had been contacting retired judges on a daily basis for many years, “begging” them to fill in on a continuous basis. While this approach had been successful in filling all available courtrooms in the City of Riverside (with either retired or sitting judges), it had been less successful at the Southwest Justice Center. Historically, it had been difficult to obtain retired judges to fill two courtrooms at the Southwest Justice Center, and although attempts were made to fill them on January 26, 2007, the attempts had been unsuccessful.
The People then requested that the court find, pursuant to People v. Yniquez (1974) 42 Cal.App.3d Supp. 13 [116 Cal.Rptr. 626], that court congestion was good cause for continuing the case beyond the statutory period of section 1382. The court denied the motion to continue without comment.
The trial judge then stated that because it was 3:37 p.m. on Friday afternoon and 30 jurors were still sitting downstairs, he proposed to dismiss the two cases at that time, but offered to entertain a request to wait until 4:00 p.m., if anyone thought that would be useful. The deputy district attorney responded that the cases should be sent to the courtrooms previously suggested by the People. The court then asked if the People objected to the cases being dismissed “now,” as opposed to at 4:00, to which the People stated that they had “an objection to you doing it, period.” The court responded that it would not send the cases to the courtrooms suggested by the People and proceeded to dismiss “pursuant to 1382 and the inability of the court to supply a courtroom for its trial within the statutory time.”
*Supp. 10 DISCUSSION

Granting the Section 1382 Dismissals Without Defense Requests Was Not Improper Under the Circumstances

The reporter’s transcripts of the dismissal hearings show that while both defense counsel announced ready for trial and objected to any further delay, neither moved to dismiss. The People contend that the defense failure to request dismissal under section 1382 requires reversal. However, the cited authorities fail to support the claim that dismissal under these circumstances was erroneous. Instead, the authorities hold only that a defendant’s failure to move for dismissal waives his statutory speedy trial right. (People v. Wilson (1963) 60 Cal.2d 139, 147-148 [32 Cal.Rptr. 44, 383 P.2d 452]; Sykes v. Superior Court (1973) 9 Cal.3d 83, 93-94 [106 Cal.Rptr. 786, 507 P.2d 90]; Bailon v. Appellate Division (2002) 98 Cal.App.4th 1331, 1348 [120 Cal.Rptr.2d 360].) Therefore, while a court has no duty to dismiss an action unless the defendant demands it (People v. Wilson, supra, 60 Cal.2d 139, 147; Ex parte Apakean (1923) 63 Cal.App. 438, 439-440 [218 P. 767]), the People have failed to establish that the court is prohibited from doing so in the absence of a demand. The statutory language requires that the court “shall order the action to be dismissed” where the statutory period has lapsed and no good cause is shown. (§ 1382, subd. (a).)
Further, the People were neither surprised nor prejudiced by the court’s sua sponte dismissal, because the record shows that they were aware that the dismissal issue would be before the court that day. The docket indicates that the cases had been called earlier in the day, at which time the defense answered ready for trial, and both matters were trailed until 3:00 p.m. of the same day. When the parties appeared at 3:10 p.m., the People filed a written “Motion to Consider All Alternatives Short of Dismissal,” thereby demonstrating their actual knowledge that dismissal was being considered. Because the People had actual notice and were permitted to articulate their position fully at a hearing in open court, they have failed to establish any prejudice from the court’s sua sponte dismissal.

The Timing of the Dismissals Was Proper Under the Circumstances

The People’s next contention, that each case was prematurely dismissed prior to the expiration of the statutory period (i.e., at approximately 3:40 p.m. on the last day on which it could be brought to trial), is likewise without merit.
Although it was undisputed that each case was dismissed on the last day of the 10-day trailing period, because the transcript shows that both dismissals *Supp. 11 occurred before the end of the court day, the People contend that the statutory period under section 1382 had not expired and the dismissals were therefore premature. However, the reporter’s transcript of the Cole hearing indicates that just prior to dismissing the case at approximately 3:37 p.m., the court indicated its intent to dismiss at that time, but offered to wait until 4:00 p.m., if anyone thought that would be useful, or if either party objected. When the court asked the prosecutor if he objected to a dismissal prior to 4:00 p.m., he responded that he objected to the dismissal, “period.” A reasonable interpretation of this exchange is that the prosecutor did not object to the timing of the dismissal, but only to the dismissal itself. Had the People objected to the timing when specifically asked about it, the record indicates that the trial court would have deferred its ruling until later in the day. Because the prosecutor failed to object to the timing of either dismissal in the trial court, this court deems the issue waived for the purposes of appeal. (In re S.B. (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746].)
Even if the issue was not waived, the People are not entitled to relief on this ground because it was neither unreasonable nor an abuse of discretion for the trial court to have dismissed the cases under these circumstances (i.e., shortly before the end of the court day on the last possible day for trial, where the record reflected virtually no likelihood that the case could be “brought to trial” for the purposes of section 1382 prior to the expiration of that court day). Finally, there is no evidence in the record that these circumstances changed in the last few minutes of the day.

The Trial Court Did Not Abuse Its Discretion in Finding No Criminal Courtrooms Available

As to the next contention, that the trial court dismissed the cases despite the availability of criminal courtrooms, we find that the trial court did not abuse its discretion in determining that no such courtrooms were available.
The record reflects that at approximately 3:30 p.m., the People urged the trial court to send the misdemeanor cases to any of three criminal courtrooms located at the Southwest Justice Center, 40 to 45 miles away, to which felony cases had been assigned for trial. The felony trials were scheduled to begin on the next court day. The prosecutor argued that despite their trailing felony cases, these three courtrooms were “available” because the statutory time to bring the felony cases to trial would not expire for another two or three days. As a result, the prosecutor requested that the misdemeanor cases be sent to the felony courtrooms to be tried prior to the felony cases. He represented that a local prosecutor could be in any of those courtrooms within approximately 10 minutes to begin litigating Evidence Code section 402 motions.
*Supp. 12 The trial court declined the People’s suggestion, explaining that due to the chronic and increasing backlog and the procedural posture of the felony cases, placing the misdemeanor trials ahead of the felony trials would result in the latter being delayed until the last possible day for trial. Because it was not confident that any courtrooms would be available at that time, rather than risking dismissal of the felonies under section 1382, the trial court made the “judgment call” to risk dismissal of the misdemeanor cases instead. On this basis, the trial court concluded that none of the three courtrooms to which the felony cases had been assigned was available to try the misdemeanor cases.[9]
“The judge has the inherent power to exercise reasonable control over the proceedings before the court . . . [citations], and it is the judge who is charged with administering the court calendar, including setting the order and time at which cases are to be tried.” (People v. Torres (1984) 159 Cal.App.3d Supp. 8, 13 [206 Cal.Rptr. 537]; see also People v. Henderson (2004) 115 Cal.App.4th 922, 940 [9 Cal.Rptr.3d 655].) “While it is difficult to define with precision the exact meaning of the phrase ‘abuse of judicial discretion’ [citation], it has been stated that ‘discretion is abused whenever ... the court exceeds the bounds of reason, all of the circumstances before it being considered.’ ” (Estate of Horman (1968) 265 Cal.App.2d 796, 807 [71 Cal.Rptr. 780].) In light of these principles and the relevant circumstances, we find the trial court’s determination that no criminal courtrooms were “available” to try the misdemeanor cases was a reasonable and proper exercise of its judicial discretion.

The Court Did Not Abuse Its Discretion by Refusing to Assign the Trials to Civil Courtrooms

In a related contention, the People argue that the trial court erred by dismissing the cases without considering the availability of civil courtrooms, in violation of the requirement in section 1050, subdivision (a), that criminal cases take precedence over civil matters. That subdivision indicates that because the expeditious disposition of criminal cases is necessary to the welfare of the people of the State of California, it is the duty of counsel, the courts and the judges to expedite the proceedings to the greatest extent consistent with the ends of justice. This provision also states: “In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings.”
*Supp. 13 The People contend that by unreasonably refusing to send the trials to family law, small claims or probate courtrooms, the trial court not only committed an error of law by interpreting the term “civil” in an incorrect manner, but also violated the foregoing unambiguous and plain language of section 1050, subdivision (a).
Although section 1050, subdivision (a), does not define “civil matters or proceedings,” the California Supreme Court provides the following general guidance concerning the different types of judicial remedies: “Since 1872, judicial remedies have been divided into two classes: actions and special proceedings. [Citation.] An ‘action’ is defined as ‘an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.’ [Citations.] A ‘special proceeding’ is ‘[e]very other remedy’ that is not an ‘action.’ [Citations.] With respect to civil actions, ‘an “action” means the same thing as a “suit.” [Citation.]’ [Citations.] Indeed, the Legislature used the terms ‘civil action’ and ‘civil suit’ interchangeably in this context.” (People v. Yartz (2005) 37 Cal.4th 529, 536 [36 Cal.Rptr.3d 328, 123 P.3d 604].)
Special proceedings of a civil nature, located in part 3 of the Code of Civil Procedure, include extraordinary writs of mandate and prohibition, summary proceedings (such as unlawful detainer), contempt, eminent domain and arbitration. In other codes, special proceedings include probate, guardianship, adoption, conservatorship, juvenile dependency, commitment of dangerous individuals (including sexually violent predators), persons disabled by mental illness, developmental disability, narcotics and alcohol addiction. (Bagration v. Superior Court (2003) 110 Cal.App.4th 1677, 1684-1685 & fn. 7 [3 Cal.Rptr.3d 292].)
“The term ‘special proceeding’ is not generally defined by statute, except in the negative, [citation] nor does it have a well-established meaning.” (In re Marriage of Galis (1983) 149 Cal.App.3d 147, 152 [196 Cal.Rptr. 659].) It has been observed that special proceedings are not easily classified as either criminal or civil. (In re Bittaker (1997) 55 Cal.App.4th 1004, 1009-1010 [64 Cal.Rptr.2d 679], citing 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 17, p. 72.)
For example, while writs of mandate, prohibition and review are designated in the Code of Civil Procedure as special proceedings of a civil nature, an extraordinary writ emanating from a criminal proceeding is often considered part of the underlying criminal action. (Bravo v. Cabell (1974) 11 Cal.3d 834, 838-840 [114 Cal.Rptr. 618, 523 P.2d 658].) A petition to commit an individual as a sexually violent predator is a special proceeding of a civil *Supp. 14 nature. (People v. Yartz, supra, 37 Cal.4th 529, 532.) A juvenile delinquency proceeding is classified as a civil action.[10] (Rinaker v. Superior Court (1998) 62 Cal.App.4th 155, 160, 163-164 [74 Cal.Rptr.2d 464].) Contempt proceedings under Code of Civil Procedure section 1209, while designated special proceedings of a civil nature, are generally acknowledged as quasi-criminal proceedings (Crawford v. Workers’ Comp. Appeals Bd. (1989) 213 Cal.App.3d 156, 165 & fn. 4 [259 Cal.Rptr. 414]) and have sometimes been referred to as “criminal in nature.” (See City of Culver City v. Superior Court (1952) 38 Cal.2d 535, 541 [241 P.2d 258].)
The trial court herein construed “any civil matters and proceedings” to mean civil actions or lawsuits, thereby excluding most special proceedings, juvenile and family law matters. Because no case has defined that phrase as used in section 1050, subdivision (a), the People urge this court to do so. However, we conclude that a precise definition is unnecessary based on the discretionary nature of section 1050, subdivision (a), which gives the trial court discretion to allocate its resources in a manner consistent with the ends of justice. Consequently, in deference to the long-standing appellate principle that a reviewing court should avoid addressing issues unnecessary to its decision, even if the issue is one of public interest, we decline to undertake that task here. (City of Santa Monica v. Stewart (2005) 126 Cal.App.4th 43, 69 [24 Cal.Rptr.3d 72].)
The language of section 1050, subdivision (a), giving criminal cases precedence over civil matters and proceedings has been a part of this statute since 1927. This provision also sets forth the continuing problems of court congestion, excessive continuances of criminal cases and the requirement of good cause for continuances. To facilitate the right to an expeditious disposition of criminal cases, it requires criminal cases to be “heard and determined at the earliest possible time” and imposes on the courts, the judges, and counsel the duty to expedite such matters “to the greatest degree that is consistent with the ends of justice.” (Ibid.) No case construing this subdivision has found it to be binding or mandatory; all cases have found it directory. While most cases construing this subdivision have addressed its requirement of good cause for continuances (and found it directory only), the few which have addressed the precedence of criminal cases have found it directory, as well. For example, in People v. McFarland (1962) 209 Cal.App.2d 772 [26 Cal.Rptr. 596], the Fourth Appellate District opined: “Appellant contends that the only reason for the continuance in question was to permit counsel for Wallace to finish a civil trial, and this was not *Supp. 15 ‘good cause’ as it gave precedence to a civil over a criminal action, contrary to the provisions of Penal Code section 1050, and cites Herrick v. Municipal Court[ (1957)] 151 Cal.App.2d 804 [312 P.2d 264], in support of this contention. The provisions relied upon merely establish a policy (People v. Tenedor [(1951)] 107 Cal.App.2d 581, 583 [237 P.2d 679]); are not absolute (People v. Osslo [(1958)] 50 Cal.2d 75, 106 [323 P.2d 397]); and do not require that criminal proceedings be given precedence over civil proceedings regardless of the circumstances. (People v. Osslo, supra, 50 Cal.2d 75, 106.) Collaterally the provisions of [former] section 681a of the Penal Code declare a policy that ‘criminal cases shall be heard and determined at the earliest possible time,’ and impose a duty upon the courts, judicial officers and district attorneys ‘to expedite the hearing and determination of all such cases and proceedings to the greatest degree that is consistent with the ends of justice.’ It is obvious that these provisions do not impose an arbitrary standard because the purposes to be achieved expressly are subservient to the ‘ends of justice.’ ” (People v. McFarland, supra, 209 Cal.App.2d at p. 777, italics added.)
McFarland’s, statements that criminal case precedence establishes a nonabsolute policy, which should not be applied without considering the circumstances and the ends of justice, make it clear that whether a particular criminal case takes precedence over civil matters is within the court’s discretion. McFarland has never been overruled and was subsequently cited with approval for the proposition that this provision does “ ‘not require that criminal proceedings be given preference over civil proceedings regardless of the circumstances.’ ”[11] (People v. Carlson (1977) 76 Cal.App.3d 112, 115-116 [142 Cal.Rptr. 638], italics added, citing People v. McFarland, supra, 209 Cal.App.2d 772, 777; see generally People v. Ruiz (1988) 44 Cal.3d 589, 617 [244 Cal.Rptr. 200, 749 P.2d 854]; People v. Osslo, supra, 50 Cal.2d 75, 106.)
Therefore, even if the trial court’s interpretation of the term “civil” was narrower than optimum, this does not require reversal. “ ‘If the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. Two theories seem to be involved here: First, that the appellate court reviews the action of the lower court and not the reasons for its action; second, that *Supp. 16 there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct.’ [Citation.]” (People v. Gibson (1987) 195 Cal.App.3d 841, 853 [241 Cal.Rptr. 126], italics omitted.)
We conclude that the trial court was entitled to exercise, and did exercise, its discretion in a manner consistent with the policy and objectives of section 1050, subdivision (a). It considered all relevant circumstances, including the welfare of the citizens of the State of California. It indicated that separate from its legal interpretation of the term “civil,” its decision was based on its finding that traditional civil courtrooms were already exclusively devoted to criminal trials, that the work done by the family, probate, traffic, small claims and juvenile courts was of great importance to the community, and that depriving the community of these remaining judicial services would be highly detrimental to its citizens. Because the policy of criminal case precedence expressed in section 1050, subdivision (a), is based on the welfare of the citizens of the State of California, this is a valid and relevant consideration in determining whether a particular criminal case should receive precedence.
The People contend that the trial court lacked sufficient awareness of the overall availability of criminal and noncriminal courtrooms within the entire Riverside Superior Court, making an informed exercise of its discretion impossible. However, because the record fails to support this alleged lack of awareness on the part of the trial court, we reject this contention.
We therefore conclude that under the circumstances, in a county severely overburdened by criminal cases, which had already abandoned traditional civil trials in deference to the policy of criminal case precedence under section 1050, subdivision (a), it was a proper exercise of discretion for the trial court to refuse to divert its remaining judicial resources to try the two misdemeanor cases which are the subject of these appeals.[12] (People v. Carlson, supra, 76 Cal.App.3d 112, 115.)

The People Did Not Show Good Cause for a Continuance Beyond the Statutory Period

Finally, the trial court did not abuse its discretion by denying the People’s motion to continue both trials beyond the statutory limit of section 1382. To avoid a dismissal when a case is not brought to trial within the time allowed, the prosecution has the burden of establishing good cause for failing to do so. What constitutes good cause is a matter within the court’s discretion, and its determination will be reversed only if that discretion is abused. (Arreola v. Municipal Court (1983) 139 Cal.App.3d 108, 113 [188 *Supp. 17 Cal.Rptr. 529]; Owens v. Superior Court (1980) 28 Cal.3d 238, 250-253 [168 Cal.Rptr. 466, 617 P.2d 1098].)
However, chronic court congestion and overcrowding do not constitute good cause for a continuance under section 1382. (People v. Johnson (1980) 26 Cal.3d 557, 570-572 [162 Cal.Rptr. 431, 606 P.2d 738]; Arreola v. Municipal Court, supra, 139 Cal.App.3d at pp. 113-115; Rhinehart v. Municipal Court (1984) 35 Cal.3d 772, 781-782 [200 Cal.Rptr. 916, 677 P.2d 1206].)[13] If it did, criminal defendants could be consistently denied the right to a speedy trial whenever the state failed to provide adequate court funding to allow criminal defendants to be brought to trial in a timely manner. (People v. Johnson, supra, 26 Cal.3d at pp. 571-572.) Because the state has the obligation to provide sufficient resources to dispose of the usual court business promptly, court congestion will not constitute good cause unless the circumstances are exceptional. (Ibid.) Exceptional circumstances are defined as unique, nonrecurring events which have produced an inordinate number of cases for court disposition. (Id. at p. 571.)
The record shows that the lack of available courtrooms was the result of chronic court congestion, a fact undisputed by the People. Nothing in the record suggests exceptional circumstances. While the effect of the congestion (i.e., the two misdemeanor dismissals) may have been unique, this was merely the inevitable and foreseeable result of the chronic and increasing court congestion. Therefore, no good cause for a continuance was established.
The People impliedly contend that the trial court’s administrative policy was responsible for the backlog of criminal cases and that this constitutes good cause for a continuance. We reject this because the record fails to support the contention that the trial court was responsible for the chronic problem of the rising criminal caseload. But even if it were, case law provides that delay caused by court management policies does not constitute good cause to avoid dismissal under section 1382. (People v. Johnson, supra, 26 Cal.3d at p. 570; Perez v. Superior Court (1980) 111 Cal.App.3d 994, 1000 [169 Cal.Rptr. 45]; Herrick v. Municipal Court, supra, 151 Cal.App.2d 804, 810.)
Consequently, the trial court’s denial of the People’s request to continue the trials was consistent with existing legal authority and was not an abuse of discretion.
*Supp. 18 DISPOSITION
For all the foregoing reasons, the judgments of dismissal are hereby affirmed.

Margines, P. J., † Moss, J., † and Bauer, J. †

Judges of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

 Because two of the three judges on the panel that issued the October 17, 2007, judgments had not been assigned to serve as judges of the Riverside County Superior Court Appellate Division, the above referenced writ of review gave this court the option of vacating its prior judgments and deciding the appeals with a panel of properly assigned judges.

 Unless otherwise designated, all further statutory references are to the Penal Code.

 The reporter’s transcript of the Cole dismissal hearing has been certified as the settled statement in each case. In addition, in the Gurdian case, at the People’s request, we take judicial notice of the reporter’s transcript of the Cole dismissal hearing.

 The Riverside Hall of Justice is located at 4100 Main Street, Riverside.

 The People ask this court to take judicial notice of computerized dockets in each of the three felony cases referred to above. However, they did not request this of the trial court, and because these items were not before the trial court, we decline to take judicial notice of them on appeal.

 The Southwest Justice Center is located at 30755-D Auld Road, Murrieta.

 Although Indio has three court locations, only the Larson Justice Center, located at 46200 Oasis Street, Indio, hears criminal cases. Therefore, the trial court’s references to Indio appear to mean the Larson Justice Center.

 The People did not dispute the trial court’s characterization of the situation as a continuing problem.

 Another factor is that the “available” courtrooms were 40 to 45 miles away at 3:30 p.m. on a Friday afternoon. While the district attorney’s office may have had a deputy standing by, ready to commence pretrial motions within 10 minutes, there is no indication in the record that it was reasonable to expect the same of defendants or their counsel.

 Although juvenile delinquency matters are not criminal, but civil actions, the People argued in the lower court that criminal cases should not take precedence over juvenile matters.

 This discretionary option is necessary to avoid absurd results. If the requirement of criminal precedence were absolute, the trial of a petition to commit a sexually violent predator, a special proceeding of a civil nature (People v. Yartz, supra, 37 Cal.4th at p. 532) would be required to yield to a misdemeanor case on its last day for trial. The adjudication of other civil commitments (in which mentally ill individuals are involuntarily confined even though they have committed no crime) would also be subordinate to misdemeanor trials, resulting in excessive confinements prior to judicial review or, if no such review could occur, the possible release of dangerous individuals into the community.

 We find no merit to the People’s claim, raised in their reply brief, that the court misunderstood the extent of its discretion.

 The case on which the People rely (People v. Yniquez, supra, 42 Cal.App.3d Supp. 13, 19) is not controlling because (1) superior court appellate division cases are not binding authority, and (2) Yniquez and other similar cases have been questioned insofar as they assume that court congestion or heavy public defender caseloads constitutes good cause. (People v. Johnson, supra, 26 Cal.3d at p. 571.)