# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

DAJAH BROWN,
Defendant and Appellant.

S271877

Sixth Appellate District
H048462

Santa Clara County Superior Court
17AP002184, C1646856

---

March 27, 2023

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero and Justices Kruger and Jenkins concurred.

Justice Groban filed a concurring and dissenting opinion, in which Justices Liu and Evans concurred.

---

PEOPLE v. BROWN

S271877

Opinion of the Court by Corrigan, J.

As part of their inherent power to control the litigation before them, trial courts enjoy broad discretion to deny continuances unsupported by a showing of good cause. However, established case law holds that it is an abuse of discretion to deny a trial continuance, solely because good cause is lacking, when doing so will result in dismissal of the charges and the continuance can be granted without violating the defendant's speedy trial rights.  (See *People v. Ferguson* (1990) 218 Cal.App.3d 1173 (*Ferguson*); see also Pen. Code., §§ 1050, subd. (*l*), 1050.5, subd. (b).)[1]

This case involves a motion to continue the hearing on a suppression motion.  (§ 1538.5.)  We conclude the *Ferguson* principles apply when the People are unable to proceed with such a hearing.  If the challenged evidence is so critical that its suppression would require dismissal of the case, the court must generally grant a continuance unless dismissal would be in furtherance of justice.  The burden is on the prosecution to show an inability to go forward without the evidence in dispute.  The court, however, must ultimately determine whether dismissal of the case is reasonably probable absent a continuance.

---

[1]  All statutory references are to the Penal Code unless otherwise noted.

1

## I.  BACKGROUND

Near 11:30 p.m. on July 13, 2016, San Jose Police Department Officer Nader Yasin saw defendant and another woman standing in an area known for prostitution.  Upon noticing the officer's patrol car, the women walked away in opposite directions.  Officer Yasin followed defendant and detained her.  Defendant admitted she worked as a prostitute but said she had not had any "dates" that night.  When asked if she had any condoms, she produced four.  After an advisement, defendant waived her *Miranda* rights and admitted she had been loitering for purposes of prostitution.  (Former § 653.22, subd. (a); *Miranda v. Arizona* (1966) 384 U.S. 436.)  She was cited and released.

Defendant was arraigned, entered a plea of not guilty, and waived her right to a speedy trial.  On January 19, 2017, she moved to suppress both her statements and the physical evidence gathered by Officer Yasin as the fruit of an unlawful detention. (§ 1538.5.) On the date scheduled for the suppression hearing, the prosecutor orally requested a continuance.  He explained that Yasin was under subpoena but had called during the lunch recess to report that he was the only gang unit officer available to interview a percipient witness to a shooting.  The interview was scheduled at the same time as the hearing.  Without consulting the court or notifying opposing counsel, the prosecutor told Yasin "it would be okay" for him to conduct the interview rather than come to court.  Defendant objected to a continuance, arguing a lack of good cause.  The court agreed and passed the matter to the afternoon to allow the prosecutor to secure the officer's presence.

When the case was recalled, Officer Yasin did not appear and the prosecutor gave no further explanation. Nevertheless, he urged the court to continue the matter, noting Yasin's testimony was needed to respond to the motion and the challenged evidence was critical to the People's case. He observed that the People needed only a brief continuance and argued defendant would suffer no prejudice because she was out of custody and had waived her speedy trial rights. The court rejected these arguments and denied the continuance for lack of good cause. Because the People had no witness, the suppression motion was granted. Asked how he wished to proceed, the prosecutor relayed his understanding that "a lot of the evidence in this case was evidence obtained by . . . observation from the police officer before any contact with the defendant." He asked the court not to dismiss the case but instead to give the People additional time to determine whether they could proceed without the suppressed evidence. Defense counsel responded that the People had no remaining evidence sufficient to prove the charges and invited the court to dismiss the case under section 1385. Defendant then withdrew her time waiver, making March 20, 2017 the last day on which trial could begin under section 1382. The court set a trial date of March 6, 2017.

On March 2, the People moved for reconsideration based on *People v. Ferrer* (2010) 184 Cal.App.4th 873 (*Ferrer*), which held that a court abuses its discretion by denying a prosecutor's request to continue a suppression hearing when the denial will foreseeably result in dismissal of the case. The prosecutor stated that the People would be unable to proceed to trial if the evidence was suppressed. The court declined to impose monetary sanctions because it found the prosecutor had not acted in bad faith. Based on *Ferrer*, the court vacated its prior

orders and held a new suppression hearing on March 17. After hearing testimony from both Officer Yasin and defendant, the court denied the suppression motion.

When the case was called for trial on March 20, 2017, defendant agreed to a "slow plea" pursuant to *Bunnell v. Superior Court* (1975) 13 Cal.3d 592. Under this procedure, a defendant waives the right to jury trial and allows the court to decide the case based on police reports or other agreed-upon evidence. (*People v. Robertson* (1989) 48 Cal.3d 18, 39–40.) The court accepted defendant's plea, found her guilty, and placed her on probation for three years. It imposed fines and fees of $235 but ordered no jail time.

Defendant appealed, challenging the court's decision to reconsider its continuance and suppression rulings. The superior court's appellate division affirmed, noting the *Ferrer* decision was dispositive. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) A lengthy concurrence urged that *Ferrer* was wrongly decided. The Sixth District Court of Appeal granted defendant's petition to transfer (Cal. Rules of Court, rule 8.1006) and issued an opinion disagreeing with *Ferrer*. The Court of Appeal concluded *Ferrer*'s rule was unsupported and criticized the rule's "difficulties in application." (*People v. Brown* (2021) 69 Cal.App.5th 15, 31 (*Brown*).) Instead, the court held that trial courts retain authority to deny a continuance unsupported by good cause even if the decision will foreseeably result in dismissal of the case for lack of evidence. (*Id.* at p. 32.) We granted review to resolve the conflict. We reverse the Court of Appeal's judgment and clarify the *Ferrer* rule.

## II. DISCUSSION

The trial court's authority to grant continuances in criminal cases is governed by statute. Accordingly, we begin with an examination of the relevant provisions, guided by familiar principles. " ' "We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617.) Issues of statutory construction are reviewed de novo. (*People v. Jimenez* (2020) 9 Cal.5th 53, 61.)

A.  *Statutory Text*

Originally enacted in 1927 and amended many times since, section 1050 regulates the granting of continuances in criminal cases.[2] Its initial subdivision describes the statute's aim as follows: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible

---

[2]  Early versions of section 1050 placed limits only on continuances of trial (see *People v. Iocca* (1974) 37 Cal.App.3d 73, 78), but amendments have expanded the statute's reach to all criminal hearings. (See *People v. Johnson* (2013) 218 Cal.App.4th 938, 942 (*Johnson*).)

time.  To this end the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses.  Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails.  It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice." (§ 1050, subd. (a).)  Later provisions set out both procedural requirements and the necessary substantive showing.

Subdivisions (b) through (d) of section 1050 address procedure.  As relevant here, subdivision (b) requires that motions for a continuance be supported by written notice, filed and served at least two court days before the hearing in question, together with "affidavits or declarations detailing specific facts showing that a continuance is necessary." (§ 1050, subd. (b).)  Subdivision (c) provides that a party who has not followed the procedures in subdivision (b) may still request a continuance, but "unless the moving party shows good cause for a failure to comply with those requirements, the court may impose sanctions as provided in Section 1050.5."  (§ 1050, subd. (c).)  Those sanctions may include a fine of up to $1,000 and a report to "an appropriate disciplinary committee" (§ 1050.5, subd. (a)), but they may *not* include dismissal of the case (§ 1050.5, subd. (b)).  Finally, when the moving party has

failed to satisfy the procedural requirements of section 1050, subdivision (b), subdivision (d) requires the court to hold a hearing to determine whether good cause excuses the lack of procedural compliance. If the moving party cannot show good cause for that failure, subdivision (d) states that "the motion for continuance shall not be granted." (§ 1050, subd. (d).)

Other subdivisions of section 1050 go on to explain the substantive requirements for obtaining a continuance. Subdivision (e) states: "Continuances shall be granted only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (§ 1050, subd. (e).) Convenience of witnesses is, however, a factor for the court to consider both in deciding whether good cause has been shown and in selecting the new date. (§ 1050, subd. (g)(1).) If the court concludes that a continuance is necessary, it must state on the record the facts justifying that finding. (§ 1050, subd. (f).) Any permitted continuance must be limited to "only . . . that period of time shown to be necessary by the evidence considered at the hearing on the motion." (§ 1050, subd. (i).) Section 1050, then, provides for two different good cause showings. If the moving party has not complied with the procedures of subdivision (b), it must show that there is good cause to excuse that failure. If such a showing is not made the court may impose sanctions. As to the merits of a continuance motion, subdivision (e) requires a good cause showing that a continuance is necessary.

A trial court's exercise of its broad discretion when ruling on a continuance motion is accorded substantial deference on appeal. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 508; *People v. Beames* (2007) 40 Cal.4th 907, 920 (*Beames*).) Although section 1050 states conditions under which

continuances "shall" and "shall not" be granted, case law has long recognized that various aspects of section 1050 are directory rather than mandatory.[3] This principle is confirmed by the statute's final subdivision. Enacted in 2003, subdivision (*l*) states: "This section is directory only and does not mandate dismissal of an action by its terms." (§ 1050, subd. (*l*).) Accordingly, "a failure to comply with a particular directive set forth in section 1050 does not, in itself, *require* dismissal of a criminal proceeding." (*Engram, supra,* 50 Cal.4th at p. 1151, fn. 8, italics added; see *Johnson, supra,* 218 Cal.App.4th at pp. 942–943; see also *Malengo v. Municipal Court* (1961) 56 Cal.2d 813, 816; *People v. Brown* (1956) 141 Cal.App.2d 299, 302–303.) Thus, despite the seemingly mandatory phrasing of some portions of section 1050, a number of appellate decisions have recognized the trial court's discretion to allow a continuance even without a factual showing of necessity. (See *Johnson,* at pp. 942–943; *Brown,* at p. 303.)

Section 1050.5 was also added in 2003. After prescribing sanctions for a movant's failure to comply with section 1050's procedural requirements, section 1050.5 states that these sanctions "shall be in addition to any other authority or power available to the court, except that the court or magistrate shall not dismiss the case." (§ 1050.5, subd. (b).)

---

[3] As we explained in *People v. Engram* (2010) 50 Cal.4th 1131, 1148, footnote 7 (*Engram*) in regard to another aspect of section 1050: "[T]he term 'directory,' when used in reference to a statute, has been employed to denote different concepts — sometimes referring solely to the lack of (or limited type of) remedy prescribed when the statute is violated, and sometimes referring to whether a statute is simply 'directive' or 'permissive' rather than 'obligatory,' 'compulsory,' or 'mandatory.' "

The text of section 1050 speaks only to continuances; it is not an independent source of dismissal authority. It is important to keep the distinction in mind. Although section 1050, subdivision (*l*) makes clear that dismissal of an action is never *required*, the statute does not explicitly forbid dismissals that may result from a continuance denial. Further, section 1050.5 is inapplicable here. The sanctions statute forbids dismissal of an action as punishment for a party's failure to satisfy procedural requirements (§ 1050.5, subd. (b)), but it does not speak to the court's authority in ruling on a motion that fails to demonstrate a continuance is necessary.

The language of section 1050 thus does not resolve the issue before us, because it neither authorizes nor prohibits dismissals. To consider how the relevant statutes can be read together, we turn to their legislative history and interpretative case law.

B. *Case Law Context and Legislative History*

Both section 1050, subdivision (*l*) and the language of section 1050.5, subdivision (b) discussed above were added by Assembly Bill No. 1273 (2003–2004 Reg. Sess.). The Legislature acted in response to a series of cases, which we discuss before reviewing the bill's legislative history.

1. *Cases Addressing Continuance of Trial*

Several opinions have examined how the time limits in section 1382 affect the court's discretion in ruling on continuances that would delay the start of trial. Without the defendant's waiver or consent, or a showing of "good cause to the contrary," section 1382 requires that the court dismiss an action not brought to trial within: (1) 60 days after the defendant's arraignment or plea in felony cases; (2) 30 days after the

arraignment or plea in misdemeanor cases when the defendant is in custody; or (3) 45 days after the arraignment or plea in misdemeanor cases when the defendant is not in custody. (§ 1382, subd. (a)(2)–(3).) Whenever the defendant has requested or agreed to begin trial on a date beyond the applicable period, the case must be brought to trial no later than 10 days after that date. (*Id.*, subd. (a)(2)(B), (a)(3)(B).)

An early decision touching on the interplay between section 1382 and continuances was *People v. Kessel* (1976) 61 Cal.App.3d 322 (*Kessel*). On the day set for trial, the People moved for a seven-day continuance because the deputy district attorney assigned to the case was unavailable. The court denied the continuance and dismissed the case under section 1382. (*Kessel*, at pp. 324–325.) Although the Court of Appeal did not separately address the propriety of the continuance ruling, it held that dismissal of the case was an abuse of discretion because the seven-day continuance would have resulted in a trial date set within section 1382's 10-day grace period. (*Kessel*, at p. 325.) Further, the dismissal could not be justified under section 1385, which permits an action to be dismissed "in furtherance of justice" (§ 1385, subd. (a)), because there had been no showing of prejudice to the defendant. (*Kessel*, at p. 325.) The court explained: "The People's right to be heard cannot be frustrated to accommodate judicial convenience or because of court congestion. A dismissal under section 1385 for such a reason is an abuse of discretion." (*Id.* at p. 326; see *People v. Orin* (1975) 13 Cal.3d 937, 946–947 (*Orin*).)

*People v. Flores* (1978) 90 Cal.App.3d Supp. 1, 6 (*Flores*), highlighted the distinction between continuances and dismissals. On the date of trial, the prosecution requested a one-week continuance because the arresting officer was unavailable

to testify.  The court denied the request and dismissed the case because the People were not ready to proceed.  (*Ibid*.)  The superior court's appellate division reversed.  First, it observed that the requested continuance was "*well within*" the time limit prescribed by section 1382.  (*Flores*, at p. 6.)  So that statute provided no basis for dismissing the action.  (*Id*. at p. 7.)  Nor would a continuance have impinged on the defendant's constitutional speedy trial rights.  (*Id*. at pp. 7–8.)  The appellate division then considered section 1050's requirement that continuances be granted "only upon a showing of good cause." (§ 1050, subd. (e); see *Flores*, at pp. 8–9.)  Noting that section 1050's provisions are not mandatory, the court relied on the language of section 1382 to conclude an action that can be brought to trial within the applicable section 1382 time limit may not be dismissed despite the absence of good cause for a continuance.  (*Flores*, at p. 9.)  Finally, the court concluded dismissal was not appropriate under section 1385 because such a dismissal arbitrarily prevents the People from prosecuting an offense supported by probable cause, without any showing of detriment to the defendant.  (*Flores*, at p. 9.)

Subsequent Court of Appeal decisions reached the same conclusion.  In *People v. Arnold* (1980) 105 Cal.App.3d 456, 458 (*Arnold*), the prosecution sought a trial continuance to locate an essential witness, requesting a date within section 1382's 10-day grace period.  The request was denied and the case dismissed, assertedly pursuant to section 1382.  (*Arnold*, at p. 459.)  The Court of Appeal held the ruling erroneous, under both section 1382 and section 1385.  A dismissal within the 10-day grace period was directly contrary to section 1382.  In addition, because such a dismissal undermined the legislative

policy expressed in section 1382, it was not "in furtherance of justice" under section 1385. (*Arnold*, at p. 459.)

Similarly, *People v. Hernandez* (1979) 97 Cal.App.3d 451 (*Hernandez*) held that a trial court lacks discretion to dismiss a criminal case before expiration of section 1382's 10-day grace period. (*Hernandez*, at p. 454.) Although the prosecution had failed to show good cause for its inability to proceed, the court reasoned no such showing was necessary because section 1382's grace period operates as an exception to the statute's good cause requirement. (*Hernandez*, at pp. 454–455.) Echoing *Kessel*, *Arnold*, and *Flores*, the *Hernandez* court also concluded the dismissal contravened the legislative policy underlying section 1382's grace period. As a result, the dismissal was not in furtherance of justice, as required by section 1385. (*Hernandez*, at p. 455.) *People v. Rubaum* (1980) 110 Cal.App.3d 930 (*Rubaum*) was in accord, holding the trial court abused its discretion in denying a continuance and dismissing the case under section 1385 when the People's requested a continuance date within section 1382's time limit.

*Ferguson*, *supra*, 218 Cal.App.3d 1173 reaffirmed these decisions. The court there concluded the trial court had improperly dismissed a case under section 1385 after denying a brief continuance for the prosecutor to complete a different trial. (*Ferguson*, at pp. 1176–1177, 1180.) The Court of Appeal's reasoning was "strongly guided" (*id.* at p. 1181) by our decision in *Orin*, which had explained that the furtherance of justice determination under section 1385 " 'requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal.' " (*Orin*, *supra*, 13 Cal.3d at p. 945.) The dismissal in *Ferguson* was held to be "without proper and

adequate reason" and "served no policy objective." (*Ferguson*, at pp. 1182–1183.) Nor would the requested continuance have harmed the defendant, who was not in custody and had previously "seemed in no rush to get to trial." (*Ibid.*)

However, *People v. Torres* (1984) 159 Cal.App.3d Supp. 8 (*Torres*) articulated an important limitation on these general rules. There, a prosecutor sought continuances of trial in two cases within the section 1382 time period but offered no showing of why the People could not proceed. Instead, the prosecutor disclosed a strategy of seeking " 'to always drag things out till [*sic*] the last possible moment so that even if the case was lost or dismissed, the defendants paid the price through the hassle of multiple appearances and the expenses of private counsel.' " (*Torres*, at p. 11.) Finding no good cause for delay, the trial court denied the continuances and dismissed the cases under section 1385. (*Torres*, at pp. 11, 15–16.)

The appellate division affirmed. It explained that a trial court has " 'discretion to dismiss pursuant to section 1385' " provided " 'that the reasons for the court's decision be such as "would motivate a reasonable judge." . . . There must be 'a balancing of society's interest against that of the defendant.' [Citation.] There must also be a showing of detriment to the defendant." (*Torres, supra*, 159 Cal.App.3d Supp. at pp. 12–13.) The court distinguished the line of cases discussed above because none involved a situation in which the People were capable of proceeding to trial but chose not to in order to manipulate the court and harass the defendant. (*Ibid.*) *Torres* explained, "It was never the intent of [the case law] to shift the control of the calendar from the court to the prosecutor," and emphasized that trial courts retain discretion to dismiss a case under section 1385 to address "a flagrant abuse" of power or "an

attempt by the prosecutor to usurp the inherent right of the court to control the courtroom." (*Id.* at p. 13.)

### 2. *Assembly Bill No. 1273*

The Legislature responded to these decisions by enacting Assembly Bill No. 1273 (2003–2004 Reg. Sess.), which added subdivision (*l*) to section 1050 to make clear that the statute "is directory only and does not mandate dismissal of an action by its terms." The bill also amended section 1050.5, subdivision (b) to add the final clause: "The authority to impose sanctions provided for by this section shall be in addition to any other authority or power available to the court, *except that the court or magistrate shall not dismiss the case.*" (§ 1050.5, subd. (b), italics added.) Legislative history confirms that the purpose of these amendments was to codify holdings in the *Ferguson* line of cases. (See, e.g., Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 1273 (2003–2004 Reg. Sess.) as amended May 1, 2003, pp. 2–3; Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1273 (2003–2004 Reg. Sess.) as amended May 1, 2003, pp. 2, 5–6.)

A report prepared by the Senate Committee on Public Safety described the need for Assembly Bill No. 1273 as follows: "Current law (Penal Code section 1382) provides the People and the defendant with a right to a speedy trial, but that right is balanced against the right of both parties to have at least 60 days to prepare their case. [¶] The problem AB 1273 attempts to resolve involves situations when a court seeks to dismiss a case before the expiration of the statutory 60 day time limit. [¶] The confusion involves an apparent conflict between two Penal Code sections. . . . [O]ne section (Penal Code Section 1050) requires a showing of good cause to trail a case within the 60 day statutory period and the other section (Penal Code

Section 1382) does not require a showing of good cause within the 60 day period." (Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1273, *supra*, pp. 4–5.)[4] According to the bill's sponsor, courts had sometimes "dismissed cases after the prosecutor failed to establish good cause to continue the trial of the matter even though it was still within the 60-day statutory speedy trial period." (*Id*. at p. 5.) The report stated that Assembly Bill No. 1273 was intended to codify *Ferguson*'s holding that section 1050 " 'is directory only and does not mandate any dismissal of an action by its terms.' " (*Id*. at p. 6.)[5] "Thus, under this bill a case could not be dismissed as a sanction for failing to comply with the rules governing continuances if the statutory time for a speedy trial has not run." (*Ibid*.)

By clarifying that sections 1050 and 1050.5 do not independently authorize dismissal for failure to satisfy either the procedural or substantive requirements, the Legislature confirmed that trial courts may dismiss a case, or force a dismissal by denying a continuance, only under the aegis of some *other* conferred authority. Despite limits on their discretion imposed by case law and these statutory amendments, trial courts retain the power to dismiss "in

---

[4] This analysis addressed the final version of the bill, after it had passed in the Assembly.

[5] Although the report cited *Ferguson*, the language was in fact a quotation from *Rubaum*, *supra*, 110 Cal.App.3d at page 935. (See *Ferguson*, *supra*, 218 Cal.App.3d at p. 1181.) The original source of this language appears to be *Malengo v. Municipal Court*, *supra*, 56 Cal.2d at page 816 ("section 1050 . . . is directory only and contains no provision for the dismissal of a case when its terms are not complied with").

furtherance of justice" (§ 1385, subd. (a); see *Torres*, *supra*, 159 Cal.App.3d Supp. at pp. 12–13.)

It is evident from committee reports on Assembly Bill No. 1273 that the Legislature was specifically concerned with continuances of trial. But, in codifying *Ferguson*, the Legislature would have been aware of its factual context: The People were not ready to proceed on the scheduled date because the deputy district attorney assigned to the case was engaged in a different trial. (*Ferguson*, *supra*, 218 Cal.App.3d at p. 1176.) When the Legislature amended section 1050 to clarify that the statute does not require dismissal in such a circumstance, it also effectively placed constraints on the court's ability to deny continuances. "In codifying the result in *Ferguson*, the Legislature must have understood that it was obligating trial courts to grant continuances where necessary to avoid a dismissal, even in the absence of a showing of good cause" (*Ferrer*, *supra*, 184 Cal.App.4th at p. 881), unless dismissal would be in furtherance of justice. Broad language in the legislative history is consistent with applying *Ferguson*'s reasoning to continuance requests in other proceedings. For example, committee reports consistently stated that passing Assembly Bill No. 1273 would mean that "courts may not dismiss a case due to a failure to meet the good cause requirements for a continuance" before the statutory period has expired. (Sen. Rules Com., Rep. on Assem. Bill No. 1273 (2003–2004 Reg. Sess.) as amended May 1, 2003, p. 1; see Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1273, *supra*, p. 2; Off. Crim. Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 1273 (2003–2004 Reg. Sess.) prepared for Governor Davis (July 15, 2003) p. 1.)

C.  *Applications Beyond the Trial Continuance Context*

The Courts of Appeal have considered how these principles apply to continuances of proceedings other than trial, like preliminary hearings and motions to suppress evidence (§ 1538.5).  With the exception of the Court of Appeal below, all courts addressing the question have concluded the trial court's discretion to deny a continuance is also limited in such circumstances.  We agree with this prevailing view.

1.  *Preliminary Hearings*

Shortly after the passage of Assembly Bill No. 1273, *People v. Henderson* (2004) 115 Cal.App.4th 922 (*Henderson*) considered whether *Ferguson*'s limits on continuance denials apply to preliminary hearings.  In *Henderson*, the People sought to continue a preliminary hearing because the victim was absent.  Although the victim had been mailed a subpoena, the prosecutor made no additional efforts to secure attendance. (*Henderson*, at p. 928.)  Finding the request lacked good cause, the magistrate denied the continuance.  (*Id.* at p. 929.)  The People were unable to proceed, and the case was dismissed. (*Ibid.*)  The Court of Appeal held the ruling was improper.

First, the court concluded dismissal was not appropriate under section 859b, which requires that a felony preliminary hearing be held 10 days after a defendant's arraignment or plea unless the prosecution establishes good cause for a continuance or the defendant waives time.  If there is such a showing or waiver, the statute sets an outside date of 60 days after the arraignment or plea.  That period that can be extended only with the defendant's personal consent.  (§ 859b.)  The complaint is subject to dismissal if a preliminary hearing is not held within these statutory deadlines.  (*Ibid.*; see *Henderson, supra*, 115

Cal.App.4th at pp. 930–931.) Henderson had waived the 10-day deadline. (*Henderson*, at p. 928.) Thus, a continuance was permissible under section 859b *without* a showing of good cause so long as the continued hearing date was within the 60-day window. (*Henderson*, at pp. 931–932.)

Next, the court considered whether any other statute authorized dismissal. Although section 1050 sets out procedural requirements and section 1050.5 permits sanctions for non-compliance, neither statute authorizes dismissal of the case when a continuance is denied. (*Henderson*, *supra*, 115 Cal.App.4th at p. 934.) The court discussed Assembly Bill No. 1273's amendments prohibiting dismissal as a sanction for failure to comply with the continuance statute's procedural requirements and concluded "dismissal is a disfavored and possibly unauthorized remedy" under the circumstances presented. (*Henderson*, at p. 936.)

Nor was dismissal appropriate under section 1385. *Henderson* observed that several decisions, including *Ferguson*, had "rejected the application of section 1385 to dismiss cases before trial after a failed request for a continuance made within the statutory period." (*Henderson*, *supra*, 115 Cal.App.4th at p. 936.) The court concluded "the same analysis applies to section 859b" and preliminary hearing continuances. (*Henderson*, at p. 936.) "[B]oth sections 1382 and 859b establish statutory limits to safeguard a defendant's constitutional right to a speedy trial," yet neither statute authorizes dismissal when its prescribed time period has not expired. (*Id.* at p. 939.) *Henderson* declined to confine the *Ferguson* line of cases to the trial context. It held "the trial court has no authority to dismiss an action, even when the People have failed to show good cause for a continuance under section 1050, so long as the requested

date for the preliminary hearing is within the statutory time limit established in section 859b." (*Ibid*.) The court stressed that lesser sanctions are available to punish belated continuance requests, and trial courts need not reschedule the hearing to the prosecutor's preferred date. (*Henderson*, at pp. 939–940.) But, so long as the continuance is " 'not sought arbitrarily or for an unlimited period,' " *it must be granted* if the alternative is dismissal, since a dismissal under these circumstances would not be "in the furtherance of justice within the meaning of section 1385." (*Henderson*, at p. 941.)

2. *Suppression Hearings*

The *Ferrer* decision was the first to consider these questions in the suppression hearing context. After Ferrer was held to answer, he moved to suppress statements made and evidence seized during a warrantless detention and search. (*Ferrer*, *supra*, 184 Cal.App.4th at pp. 877–878.) The prosecutor appeared at the suppression hearing but requested a continuance, explaining "she had not subpoenaed her witnesses due to a 'mix up.' " (*Id*. at p. 878.) The court denied the continuance and then granted the suppression motion because, due to the witness's absence, the People failed to establish the lawfulness of the detention and search. (*Ibid*.) After a short delay, the People announced that they were unable to proceed against Ferrer without the suppressed evidence, and the court dismissed the information. (*Ibid*.)

On appeal, the People conceded they had failed to show good cause but argued the court nevertheless could not deny a continuance because there was adequate opportunity to conduct the suppression motion before the timely trial date. (*Ferrer*, *supra*, 184 Cal.App.4th at pp. 878–879.) The *Ferrer* court

agreed, applying *Henderson*'s analysis in the suppression motion context. It explained: "In *Henderson*, the lower court did not literally dismiss the criminal case as a sanction for the prosecutor's failure to show good cause, but denial of the motion to continue meant the prosecution *lacked the necessary evidence* to present at the preliminary hearing, which led to dismissal of the case. (*Henderson, supra*, 115 Cal.App.4th at p. 929.) The *Henderson* court treated the dismissal as an unauthorized sanction for the failure to show good cause even though the dismissal was a *consequence* of the denial of the continuance rather than an express sanction. (*Id.* at p. 935.)" (*Ferrer*, at p. 882, italics added.) This application of the statutes was consistent with legislative intent, *Ferrer* reasoned, because Assembly Bill No. 1273 sought to prevent dismissals resulting from a prosecutor's temporary inability to proceed. (*Ferrer*, at p. 882, citing Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1273, *supra*, pp. 5–6.) "Thus, the Legislature intended that a dismissal that causally follows from denial of a motion for a continuance be treated as a sanction of dismissal." (*Ferrer*, at p. 882.)

*Ferrer* found the suppression hearing context "analogous" to the preliminary hearing and trial situations addressed in *Henderson* and *Ferguson*. (*Ferrer, supra,* 184 Cal.App.4th at p. 882.) It reasoned that, although the trial court did not literally dismiss the action as a sanction, it was clear that the continuance denial was likely to lead to dismissal of the case. (*Ibid*.) The People bore the burden to justify the warrantless search and seizure, and the unavailability of their witnesses "would necessarily result in" the motion being granted. (*Id.* at p. 883.) If the evidence in question, which was the only support for the charges, was no longer available, a dismissal of the case

for lack of evidence would follow. (*Ibid.*) *Ferrer* ultimately held that "[w]here it is reasonably foreseeable that granting a motion to suppress will result ultimately in dismissal of the case, the fact that the dismissal is not inevitable or immediate does not create a material distinction from the circumstances involved in *Henderson* and *Ferguson.*" (*Ibid.*)

*Ferrer* grounded its analysis on the language of sections 1050 and 1050.5. (*Ferrer, supra,* 184 Cal.App.4th at pp. 879–881.) However, the court went on to discuss the conclusions in *Ferguson* and *Henderson* that dismissals based solely on a failure to show good cause are not "in furtherance of justice." (§ 1385, subd. (a)); see *Henderson, supra,* 115 Cal.App.4th at p. 940; *Ferguson, supra,* 218 Cal.App.3d at p. 1182.) It reasoned that the same can be said for dismissals resulting from the court's refusal to continue a hearing to determine whether evidence supporting the charges was legally obtained. (*Ferrer, supra,* 184 Cal.App.4th at p. 885.) Indeed, the policy balance is arguably even more compelling in the suppression hearing context because, unlike preliminary hearings and trial, the Legislature "has not provided any independent right to a speedy suppression hearing." (*Id.* at p. 884.) It would be anomalous to conclude the Legislature intended greater protection for a defendant's interest in a prompt suppression hearing than in a prompt preliminary hearing or trial. (*Ibid.*)[6] Accordingly, *Ferrer* concluded, "the Legislature did not intend for a dismissal to result unless the

---

[6] And, because a suppression hearing is usually conducted before trial or in connection with a preliminary hearing (see § 1538.5, subds. (f)–(g)), the time limits required in those contexts protect a defendant's right to speedy adjudication.

requested continuance results in violation of a statutory time limit (such as § 859b or § 1382) or defendant's constitutional right to a fair trial (see *Henderson, supra,* 115 Cal.App.4th at p. 940)." (*Ferrer*, at p. 884, fn. omitted.)

The Court of Appeal below disagreed with *Ferrer*'s reading of both the statutory text and legislative history. Construing section 1050, subdivision (*l*)'s statement that the statute "does not mandate dismissal of an action by its terms," the court noted that the provision does not *require* dismissal but does not *preclude* dismissal either. It observed the statute "can hardly stand for proposition that the trial court has no authority — for example, under section 1385 . . . — to dismiss an action in the first place." (*Brown, supra,* 69 Cal.App.5th at p. 26, fn. omitted.) The court concluded there was no basis in the statutory text for *Ferrer*'s rule. (*Id.* at p. 25.)

In disagreeing with *Ferrer*'s reading of legislative history, the Court of Appeal focused on language that was removed from the original version of Assembly Bill No. 1273. As introduced, the bill proposed to add an express exception to section 1050's good cause requirement. Proposed subdivision (e)(2) would have stated: "The good cause requirement shall not apply to a prosecution or defense motion to continue a felony trial to a date not more than 60 days from the date of the defendant's arraignment on the information, or to a date not more than 10 days from a trial date set following the defendant's waiver pursuant to [section 1382, subdivision (a)(2)(B)]. This exception to the requirement of a finding of good cause is intended to codify existing case law." (Assem. Bill No. 1273 (2003–2004 Reg. Sess.) as introduced Feb. 21, 2003, § 1.) Amendments removed this proposed language, which would have eliminated the good cause requirement for continuances within the speedy trial period,

and replaced it with subdivision (*l*) and an amendment to section 1050.5, subdivision (b) specifying that "the court or magistrate shall not dismiss the case" as a sanction. (Assem. Amend. to Assem. Bill No. 1273 (2003–2004 Reg. Sess.) May 1, 2003, § 2.)

As discussed, even after the amendment, committee reports consistently stated that Assembly Bill No. 1273's purpose was to codify case law holding that dismissals resulting from a party's failure to satisfy the requirements for a continuance are disfavored. (See, e.g., Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1273, *supra*, p. 2; Sen. Rules Com., Off of Sen. Floor Analyses, 3d reading of analysis of Assem. Bill No. 1273, *supra*, p. 1.) The Court of Appeal below asserted these statements of purpose should be disregarded because they were erroneously referring to the original version of the bill. (See *Brown*, *supra*, 69 Cal.App.5th at p. 29.) Instead, the court stressed that the changes to sections 1050 and 1050.5 actually enacted did not eliminate the good cause requirement and did not prohibit dismissals. Accordingly, the court concluded, trial courts have authority to deny a continuance unsupported by good cause "even if this decision may foreseeably result in a dismissal of the matter for lack of evidence." (*Brown*, at p. 32.) That reading is overly expansive.

Although legislative history does not disclose why the original bill was amended, it is evident that the Legislature did not want to abandon the requirement that parties seeking a continuance show good cause for the attendant delay or potentially face sanctions. That choice is consistent with the statute's express intent to discourage unwarranted continuances and to change a legal culture in which continuances had become unacceptably commonplace. (See

23

§ 1050, subd. (a).) But it does not follow that the amendment signaled an intent to read a new dismissal authority into section 1050 and upset the balance between the court's control of its calendar and a strong policy preference for cases to be resolved on their merits. Because the Legislature chose to retain the good cause requirement, prosecutors who seek a continuance within the speedy trial window remain obligated to provide the court with a showing of necessity. But if they do not, case law codified in Assembly Bill No. 1273 places limits on the court's ability to deny the continuance when such a denial will foreseeably result in dismissal of the case.

D.     *Limits on the Court's Discretion To Deny a Continuance*

As we explain, a review of the relevant statutory text, legislative history, and case law leads us to a different conclusion from that reached by the Court of Appeal below. However, we do not completely embrace *Ferrer's* statutory analysis, either. The court below was correct to observe that the trial court retains its discretion to dismiss a case under section 1385. But it overlooked the line of cases, codified in Assembly Bill No. 1273, holding it is an abuse of that discretion to dismiss a case based solely on a failure to show good cause when a continuance can be granted within the section 1382 window. The *Ferrer* court was correct in concluding that the trial court abuses its discretion when it declines such a request to continue a suppression hearing if a dismissal of the underlying case is reasonably foreseeable. But it went astray in basing its analysis on sections 1050 and 1050.5.

Sections 1050 and 1050.5 continue to require a showing of good cause that the continuance of any criminal hearing is necessary. They do not prohibit the trial court from denying a

*continuance* when the prosecutor fails to make such a showing. Because the continuance statutes do not themselves authorize *dismissal,* however, a dismissal under these circumstances is appropriate only if it is "in furtherance of justice." (§ 1385, subd. (a).)

Section 1385 grants trial courts the power to dismiss if, under the totality of the circumstances, after weighing " 'the constitutional rights of the defendant, and *the interests of society represented by the People'* " (*Orin, supra,* 13 Cal.3d at p. 945), the court finds that dismissal would be "in furtherance of justice" (§ 1385, subd. (a)). In conducting this inquiry, a court may consider whether the prosecution acted abusively or in bad faith (*Torres, supra,* 159 Cal.App.3d Supp. at pp. 12–13), whether the defendant has suffered prejudice (*Kessel, supra,* 61 Cal.App.3d at p. 325), society's interest in the prosecution of the crime (*Orin,* at p. 945), and other relevant factors.

When the People are unable to proceed to trial because the court has suppressed evidence following a hearing on the merits, a dismissal is generally appropriate under section 1385. (See *People v. Laiwa* (1983) 34 Cal.3d 711, 722; *People v. Bonds* (1999) 70 Cal.App.4th 732, 738–740.) But there is a "distinction between evidence that does not exist and evidence that is simply unavailable at the moment." (*Henderson, supra,* 115 Cal.App.4th at p. 942.) Dismissals under section 1385 are disfavored when "the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged. Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes properly alleged' [Citation] ' "[A] dismissal which arbitrarily cuts those

rights without a showing of detriment to the defendant is an abuse of discretion." ' " (*Orin, supra*, 13 Cal.3d at p. 947.)

For nearly 50 years, appellate decisions have held that it is an abuse of discretion for the court to deny a continuance within the speedy trial period, absent countervailing factors warranting dismissal. (See *Ferguson, supra*, 218 Cal.App.3d at p. 1183; *Rubaum, supra*, 110 Cal.App.3d at p. 935; *Arnold, supra*, 105 Cal.App.3d at p. 459; *Hernandez, supra*, 97 Cal.App.3d at p. 455; *Flores, supra*, 90 Cal.App.3d Supp. at p. 9; *Kessel, supra*, 61 Cal.App.3d at pp. 325–326; see also *Henderson, supra*, 115 Cal.App.4th at p. 936.) The Legislature was aware of this settled case law and expressly set out to codify it in Assembly Bill No. 1273. When time remains to bring the matter to trial, and thus to hear the defendant's motion to suppress, it typically does not further justice for the court to force a dismissal and forestall a legitimate prosecution conducted in compliance with the speedy trial statutes. As we have observed in other circumstances, "[I]t would frustrate the orderly and effective operation of our criminal procedure as envisioned by the Legislature if without proper and adequate reason section 1385 were used to terminate the prosecution of defendants for crimes properly charged in accordance with legal procedure." (*Orin, supra*, 13 Cal.3d at p. 947.)

Accordingly, consistent with *Ferrer* and the case law codified in Assembly Bill No. 1273, we hold that it is an abuse of discretion for the court to deny continuance of a suppression hearing when it is reasonably foreseeable that dismissal of the case will result, unless dismissal would be in furtherance of justice. (§ 1385, subd. (a).)

This is not to say that the court's hands are tied when the prosecution seeks a continuance without satisfying section 1050's requirements. It may impose fines, refer the prosecutor for discipline, and impose any other sanctions at its disposal short of dismissal for procedural noncompliance. (§ 1050.5, subd. (b); see § 1050, subd. (b).) "And, of course, the trial court may exercise its discretion in selecting the length of a continuance; it need not necessarily accede to the prosecutor's preferred date." (*Ferrer*, *supra*, 184 Cal.App.4th at p. 886.)

The court below criticized *Ferrer's* "reasonable foreseeability" standard as posing some practical difficulties in application. (See *Brown*, *supra*, 69 Cal.App.5th at pp. 31–32.) In determining whether the denial of a continuance will make it reasonably foreseeable that a case will be dismissed, the court must consider the totality of the extant circumstances. One of the factors to be considered is the People's representation that they will be unable to proceed without the challenged evidence. But the court must independently examine that representation. In the end it is the court's determination, not the People's representation, that is dispositive. The reasonable foreseeability standard comes into play when the case *cannot* be tried absent the evidence, not when the case will simply be more difficult to prove. The standard requires the prosecution to defend its assertion that the contested evidence is vital. At the same time, the defense, in possession of discovery, will be poised to argue against this assertion, as it did here. Of course the defense cannot be put to the burden of arguing the strength of the prosecution's case. And while the court is generally precluded from reading the police reports and other supporting documents (see § 1204.5), the defense may give its consent for the court to do so, to assist in its consideration of the question.

In the final analysis, the burden is on the People to make this showing. If that showing falls short, the court is free to deny the continuance and proceed with the suppression hearing. Since *Ferrer* was decided more than a decade ago, neither parties nor trial courts appear to have struggled unduly with this procedure.

As an alternative to the reasonable foreseeability standard, the Attorney General argues trial courts should simply rely on prosecutors' representations as to their ability to proceed. We reject this suggestion. That approach would abrogate the court's independent responsibility and deprive the defense of its legitimate opportunity to challenge the prosecutor's assertions. Although the prosecutor's representation is certainly a relevant consideration, we stress that trial courts are obliged to take into account all facts and arguments presented on the issue and to make their own independent determination of whether dismissal of the case is reasonably foreseeable if a continuance is denied.

E.    *Application*

Here, the prosecutor failed to satisfy either the procedural or substantive requirements of section 1050 in moving for a continuance. He provided neither advance written notice nor documentary support for the motion. (See § 1050, subd. (b).) He also failed to present a showing of good cause. (See § 1050, subd. (e).) The prosecutor had unilaterally excused a subpoenaed witness from attending a court hearing, for reasons the court rightly viewed with skepticism. The trial court was thus correct in concluding good cause did not support the continuance request, even if the prosecutor acted with poor judgment rather than bad faith. We emphasize that the

prosecutor's unilateral decision to tell Officer Yasin he need not appear is not condoned under these circumstances. The subpoenaing of witnesses is part of the process by which courts and parties can ensure cases will be ready to proceed when scheduled. In subpoenaing witnesses, the parties ultimately rely on the authority of the court to compel those summoned to appear. Parties who release a witness from that duty do so at their peril. The prosecutor's action here, without consultation with the court, was distinctly ill-advised.

When the prosecution moved for reconsideration of the court's ruling, it alerted the court to *Ferrer*'s holding and represented that the People would be unable to proceed to trial if the challenged evidence was suppressed. After reviewing *Ferrer*, the court vacated its prior orders, held a suppression hearing, and ultimately denied the suppression motion. This decision reposed within the court's sound discretion. Defendant was out of custody, and the continuance was within the speedy trial timeframe. There is no indication that she suffered any prejudice by the hearing's delay. The court also expressly found that the prosecutor had not sought the continuance in bad faith. The court said it had reviewed portions of the police report at the initial suppression hearing, and it was provided additional facts in the People's opposition to the suppression motion. From these materials, the court would have readily appreciated the centrality of defendant's incriminating statements and the items collected by Officer Yasin. The trial court repeated that it had not suppressed the officer's observations, but then concluded the People were unable to proceed "because those were the — all of the facts that were available." This record is sufficient to show the trial court made an independent conclusion that the People could not proceed without the

suppressed evidence. Defendant has not established that the court abused its discretion by concluding that dismissal of the case was reasonably foreseeable should a continuance be denied.[7]

In summary, reading the statutes together, the following legislative intent is evident. Requests for continuances in criminal cases are to be justified by good cause following the procedures and showings required in section 1050. Failure to follow the required procedures can be sanctioned under section 1050.5. While the statutory requirements cannot be ignored without consequences, they are not intended to be so

---

[7] In speculating that the trial court "may have" based its ruling on the prosecutor's representation alone (conc. & dis. opn., *post*, at p. 13, fn. 3) and arguing reversal is necessary because "we simply cannot determine . . . whether the trial court understood or applied" *Ferrer*'s reasonable probability standard (*id*. at p. 11), the concurring and dissenting opinion loses sight of our standard of review. The California Constitution prohibits a judgment from being set aside on appeal absent an error that "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The separate opinion identifies no such error. Nor can reversal be justified on the theory that our opinion announces a new legal standard (see conc. & dis. opn., *post*, at pp. 13–14). We have merely affirmed and elaborated on the standard set forth in *Ferrer*. That case, contrary to the separate opinion's assertion, considered the totality of the circumstances and never suggested courts should abdicate their role and rely solely on prosecutors' representations. (See *Ferrer*, *supra*, 184 Cal.App.4th at p. 883.) Because the trial court applied a legal standard we have now approved, reversal of its decision would be appropriate only if the court had abused its discretion by acting arbitrarily or basing its decision on insufficient evidence. (See *Beames*, *supra*, 40 Cal.4th at pp. 920–921.) As the party opposing continuance, it is the *defendant*'s burden to show such an abuse of discretion. (See *id*. at p. 920.) She has not done so.

rigidly applied as to require dismissal of the case. Thus understood, the statutes empower the court to hold accountable those who fail to comply with them. But they should not be applied so stringently that legitimate prosecutions cannot be pursued within statutory time frames and constitutional protections.

## III.  DISPOSITION

The Court of Appeal's decision is reversed. The trial court's judgment, finding defendant guilty of the charge, is affirmed. While this appeal was pending, the Legislature decriminalized the act of loitering for purposes of prostitution, the offense of which defendant was convicted. (See Stats. 2022, ch. 86 (Sen. Bill No. 357), § 4, effective Jan. 1, 2023.) In doing so, the Legislature provided a mechanism for those previously convicted of that offense to request resentencing or dismissal and sealing of their case, as applicable. (See § 653.29.) Nothing we say here prohibits defendant from seeking that relief.


**CORRIGAN, J.**


**We Concur:**

**GUERRERO, C. J.**
**KRUGER, J.**
**JENKINS, J.**

PEOPLE v. BROWN

S271877

Concurring and Dissenting Opinion by Justice Groban

I agree with the majority's conclusion that the Penal Code provisions governing continuances and dismissals (see, e.g., Pen. Code, §§ 1050; 1385)[1] do not permit a trial court to deny a continuance of a suppression hearing "solely because good cause is lacking, when doing so will result in dismissal of the charges and the continuance can be granted without violating the defendant's speedy trial rights." (Maj. opn., *ante*, at p. 1.) I write separately for two reasons.

First, I share the Court of Appeal's concerns that the statutory procedures governing continuance requests of suppression hearings pose various practical complications for defendants and our trial courts. (See *People v. Brown* (2021) 69 Cal.App.5th 15, 31–32 (*Brown*); cf. maj. opn., *ante*, at p. 27.) Whether those complications warrant amendment of the controlling statutes, however, is ultimately a question for the Legislature to decide.

Second, I do not agree with the majority's conclusion that the record in this case demonstrates the prosecution and the trial court complied with the standards articulated in today's opinion. Because I am not persuaded the record supports such a finding, I dissent from that portion of the opinion and the disposition affirming Brown's judgment of conviction. I would

---

[1]  All further statutory references are to the Penal Code.

1

reverse the judgment and remand the matter to the trial court with directions to conduct a hearing on whether the prosecution has satisfied (or can satisfy) its burden to show "the case cannot be tried absent the [challenged] evidence." (Maj. opn., *ante*, at p. 27, italics omitted.)

## I.

Although I find the language of Penal Code section 1050, and in particular subdivision (*l*), to be susceptible to more than one reading, I agree that the statutory scheme is most reasonably construed as requiring trial courts to grant a continuance of a suppression hearing if the prosecution shows "the challenged evidence is so critical that its suppression would require dismissal of the case." (Maj. opn., *ante*, at p. 1.)

Nonetheless, I agree with the Court of Appeal that this "reasonable foreseeability standard" (maj. opn., *ante*, at p. 27) poses some "distinctive difficulties in application" (*Brown, supra,* 69 Cal.App.5th at p. 31; see *People v. Brown* (Santa Clara App.Div., Aug. 20, 2020, No. 17AP002184) [nonpub. opn.], conc. opn. of Saban, J. [describing practical difficulties of requiring trial courts to determine whether dismissal is likely]; cf. maj. opn., *ante*, at p. 27). It is unclear, for example, what type of evidentiary showing the prosecution must make to establish that denial of a continuance will result in dismissal. Nor is it clear how a trial court should go about making an "independent determination of whether dismissal" will occur. (Maj. opn., *ante*, at p. 28.) Is the prosecution required to describe all of the admissible evidence that remains in the case and explain why that evidence is insufficient to continue? Does the court have a duty to independently review the entire record to ensure the prosecution's representations are accurate? Should the court

hold an evidentiary hearing to determine the remaining strength of the prosecution's case?  At a minimum, forcing the trial court to assess the state of the prosecution's evidence, without having heard or seen that evidence, seems to place the court in a very difficult position.

The "reasonable foreseeability" inquiry places defendants and their counsel in an even more difficult position.  The majority notes that the defense can challenge the prosecution's assertion that denial of a continuance is likely to result in dismissal.  (See maj. opn., *ante*, at p. 27.)  It seems highly unusual, however, to place defense counsel in the position of arguing *in favor* of the strength of the State's case.  I agree  with the majority that the "burden of arguing the strength of the . . . case" ultimately resides with the prosecution, and not the defendant.  (*Ibid*.)  I also agree with the majority's rejection of the Attorney General's proposal that trial courts should simply rely on prosecutors' representations as to their ability to proceed.  (*Id*. at p. 28.)  Even so, our decision today leaves defense counsel in a quandary.  Take the situation here:  Brown surely would have benefitted if the trial court had denied a continuance and forced the prosecution to proceed to trial without Officer Yasin's challenged statements.  But to advocate for such a result, defense counsel would have had to argue that the prosecution's remaining evidence against Brown was strong enough  to move forward with the case.  Does the possibility of having the continuance denied, and thus the challenged evidence suppressed, warrant arguing in favor of the strength of the State's case?  Perhaps, but that is a tricky position for any defense lawyer to be in.

Moreover, requiring our trial courts to grant continuance requests of suppression hearings that are unsupported by good

cause diminishes their ability to manage their calendars. As we have previously explained in interpreting section 1050, "one important element of a court's inherent judicial authority . . . is 'the power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (*People v. Engram* (2010) 50 Cal.4th 1131, 1146.) Creating a rule that trial courts must grant continuances of suppression hearings, regardless of good cause, undoubtedly cuts against those interests. This case is illustrative. Without consulting the defense or the trial court, the prosecution instructed a subpoenaed police officer that he could skip the suppression hearing to conduct a routine witness interview in another matter. As a result of such conduct, Brown, her defense counsel and the trial court were all required to expend time and resources to reschedule a hearing for which there was no good reason to delay. One might fairly question whether that outcome is consistent with the purposes underlying subdivision (e)'s good cause requirement. (See § 1050, subd. (a) ["the Legislature finds that . . . . [e]xcessive continuances contribute substantially to th[e] congestion [of criminal courts] and cause substantial hardship to victims and other witnesses"].)

The complications described above take on added significance given that, at least in the context of felony cases, section 1538.5 substantially mitigates the consequences of the trial court's grant of a suppression order. If a suppression motion is granted in a felony case, the prosecutor is statutorily authorized to dismiss the case, refile, and relitigate the suppression ruling. (See § 1538.5, subd. (j).) Thus, when a court grants a suppression motion, the prosecution is left to determine whether the suppressed evidence is sufficiently important to go through the inconvenience of refiling the case and relitigating

the motion. One might wonder why that remedy — which places the onus on the prosecution rather than the courts to evaluate the importance of the evidence in question — is not equally appropriate when a prosecutor lacks good cause for being unprepared to participate in a suppression hearing.

In the end, however, whether these practical complications warrant changing the statutory procedures that govern continuance requests of suppression hearings, or otherwise warrant giving our trial courts more discretionary authority to deny such requests when unsupported by good cause, are questions for the Legislature to decide.

## II.

I agree that the reasonable foreseeability standard places the burden on the People to show the contested evidence "is so critical that its suppression would require dismissal of the case." (Maj. opn., *ante*, p. 1; see *id*. at pp. 27–28.) I also agree that trial courts cannot "simply rely on prosecutors' representations as to their ability to proceed" (*id*. at p. 28), but rather must make their "own independent determination" (*ibid*.) whether the prosecution has shown "the case cannot be tried absent the evidence" (*id*. at p. 27, italics omitted).

I do not agree, however, with the majority's further finding that the record here shows the prosecution and the trial court actually complied with these requirements — requirements that are articulated for the first time in today's opinion. I would therefore reverse the judgment of guilt and remand the matter to allow the trial court to hold further hearings on whether the prosecution can proceed without the suppressed evidence.

### A. Factual summary

Prior to trial, Brown filed a motion to suppress evidence that had been gathered by Officer Yasin during an allegedly unlawful detention. (See § 1538.5.) On the day of the suppression hearing, the People requested a continuance. The prosecutor explained that he had told Yasin, who was then under subpoena, that he could skip the hearing to conduct a witness interview in another case. The prosecutor described Yasin as the People's only witness, but provided no description of what Yasin would testify to or the nature of the evidence at issue in the suppression hearing.[2]

The court concluded the prosecution had failed to establish good cause and then granted the motion to suppress due to Yasin's absence. The court clarified it was excluding all statements Brown had made to Yasin during the allegedly unlawful stop but was not excluding any of Yasin's observations of Brown. Defense counsel argued that the case should be dismissed in light of the suppression ruling. The prosecutor, however, requested time to evaluate whether to proceed, explaining that he believed the State might be able to continue with the case because "a lot of the evidence in this case was evidence obtained by . . . observation from the police officer

---

[2]    The majority asserts that the prosecution told the court that "the challenged evidence was critical to the People's case." (Maj. opn., *ante*, at p. 3.) However, the hearing transcript shows the prosecution merely asserted that Yasin was the State's only witness; it did not make any representations about the importance of the evidence at issue in the suppression hearing. Indeed, as discussed below, later in the same hearing, the prosecutor clarified that he believed much of the evidence Yasin had gathered came in the form of observations that were not at issue in the suppression motion.

before any contact with the defendant." The court then set the matter for trial.

Two weeks later, the People filed a motion for reconsideration arguing that the court was required to grant a continuance under *People v. Ferrer* (2010) 184 Cal.App.4th 873 (*Ferrer*). The motion and accompanying memorandum of points and authorities contained an extensive discussion of *Ferrer* but did not include any discussion of the evidence against Brown or otherwise explain why the prosecution could not continue without the suppressed evidence. At the hearing on the motion, the prosecution asserted that it intended to dismiss if the suppression order was left in place but again presented no argument regarding the state of the remaining evidence. The prosecution did not mention its earlier claim that much of the evidence against Brown consisted of "observation[s] from the police" that were not subject to suppression, nor did it explain why the State's evaluation of the case had apparently changed. The court concluded that *Ferrer* required it to grant the continuance, explaining that the People had stated "they were unable to go forward." The court withdrew its prior orders, rescheduled the suppression hearing, and ultimately denied the suppression motion. Brown was later found guilty.

On appeal, Brown argued that even if *Ferrer, supra,* 184 Cal.App.4th 873, was correctly decided, the prosecution had failed to satisfy the "reasonable foreseeability" standard because it had presented no argument that the remaining evidence was insufficient to move forward with the case. The Attorney General's answer brief did not respond to that argument. Instead, the Attorney General argued that the appropriate inquiry under *Ferrer* "is not whether it is reasonably foreseeable that the case will still be strong enough to prosecute without the

suppressed evidence," but rather "whether it is reasonably foreseeable that the district attorney's office, in its discretion, will express an inability to proceed or prove the case beyond a reasonable doubt once the evidence is suppressed." The People further contended that applying that standard here, the trial court had properly granted a continuance because it had been "advised [by the prosecution] that the case would be dismissed absent the suppressed evidence." Because the Court of Appeal ultimately rejected *Ferrer's* conclusion that a trial court must grant a continuance of a suppression hearing when it is reasonably foreseeable that denying such a request will result in dismissal, the court did not address what showing the prosecution must make under the reasonable foreseeability standard or whether the prosecution had in fact made such a showing.

In its briefing before this court, the Attorney General has again declined to evaluate the state of the remaining evidence against Brown. While acknowledging that *Ferrer* does "not provide any specific guidance for determining when a denial of a continuance may result in a dismissal," the Attorney General instead reiterates that the People believe the appropriate "test . . . is whether . . . the prosecutor expresses an inability to proceed to trial. If so, the continuance must be granted." Indeed, the Attorney General goes so far as to argue that "[t]he prosecutor's assessment of the case without the challenged evidence must necessarily be the determinative factor in deciding whether denial of the continuance will lead to dismissal," and that it would be *improper* for "a court or magistrate to conduct an 'independent review' of the evidence." While the majority rejects the Attorney General's proposed approach (see maj. opn., *ante*, at p. 28), it nonetheless concludes

that the record here shows the continuance was properly granted in accord with the procedures that we have articulated in today's opinion.

### B. Analysis

On this record, I am not persuaded we can conclude that the prosecution satisfied its burden to show "the case cannot be tried absent the [suppressed] evidence." (Maj. opn., *ante*, at p. 27, italics omitted.) Nor do I believe we can assess whether the trial court did "not simply rely on prosecutors' representations as to their ability to proceed" (*id*. at p. 28), but rather made an "independent determination" (*ibid*.) that dismissal would be required.

The fact that the record provides no indication that the prosecutor or the trial court complied with these requirements is not particularly surprising given that, before today, it was unclear what standards courts should apply when evaluating a continuance request of a suppression hearing that is unsupported by good cause. There is nothing in *Ferrer, supra*, 184 Cal.App.4th 873, signifying that the prosecution has the burden to show the "challenged evidence is so critical that its suppression would require dismissal of the case" (maj. opn., *ante*, at p. 1) or that trial courts must "make their own independent determination of whether dismissal of the case is reasonably foreseeable" (*id*. at p. 28). Indeed, the Attorney General has consistently argued that under *Ferrer*, a trial court can (and indeed should) rely solely on the prosecution's representation regarding dismissal and *not* make any independent determination of that question — a proposition that the majority correctly rejects.

Nor do I find anything in the record that suggests the trial court intuited the standards we have articulated in our opinion today. As noted, the court provided no indication that it had independently evaluated the state of the evidence or that it believed the prosecution had a burden to show the case could not proceed without the disputed evidence. Nor did the court make any inquiry regarding the People's prior representation that "a lot of evidence" in the case consisted of "observations from the police officer before any contact with the defendant." The fact that the court made no inquiry about the remaining evidence, and instead seems to have relied on the prosecution's assertion that it would dismiss, suggests it may well have wrongly interpreted *Ferrer's* standard in accordance with the Attorney General's position.

And it appears beyond dispute that the prosecution did not believe it had any burden to show the suppressed evidence was "so critical that its suppression would require dismissal of the case." (Maj. opn., *ante*, at p. 1.) Instead, the State has consistently taken the position that the prosecution's representation to the court that it would dismiss was, in itself, sufficient to require a continuance. (See *ante*, at pp. 7–8.) Indeed, I find it noteworthy that despite multiple opportunities to do so, neither the prosecution nor the Attorney General has *ever* argued that the case would not merely "be more difficult to prove" (maj. opn., *ante*, at p. 27) without the suppressed evidence, but rather would require dismissal.

The majority, however, appears to conclude that various items in the record demonstrate the trial court did make an independent determination that the case could not proceed without the suppressed evidence. First, the majority surmises that the court "would have readily appreciated the centrality of

defendant's incriminating statements" (maj. opn., *ante*, at p. 29) based on the police report and the factual summary set forth in the People's opposition to the original suppression motion, both of which were provided to the court before the prosecution had ever requested a continuance. Those materials, however, merely contain a brief description of the events that preceded Yasin's stop of Brown. The prosecution never represented to the court, nor was it ever asked, whether the summary contained in either document represented a full description of the evidence against Brown. Indeed, at the time those materials were presented to the court, the prosecutor argued *against* dismissal, contending that "a lot" of the evidence against Brown was not subject to the suppression order. (See *ante*, at p. 6.)

But even if these materials could be said to support a trial court's "independent determination" (maj. opn., *ante*, at p. 28) that the denial of a continuance would result in dismissal, they do nothing to show the trial court actually made such an independent determination here or otherwise understood that it was required to do so. To be clear, the relevant problem as I view it is not that the record contains insufficient evidence to support a finding that the denial of a continuance would result in dismissal. Rather, the problem is that on this record we simply cannot determine (and indeed have reason to doubt) whether the trial court understood or applied the standards we have articulated for the first time in today's opinion. The materials submitted at the initial suppression hearing do nothing to rectify that problem.

The majority next asserts that during the hearing on the prosecution's motion for reconsideration, the trial court stated that it did not believe the People could proceed with the case because the suppressed statements were " 'all of the facts that

were available.' " (Maj. opn., *ante*, at p. 29.)  Contrary to the majority's characterization, however, the record shows the trial court did not state that *it had found* the suppressed statements made up all the facts of the case.  Rather, the record makes clear that the court was referring to statements *defense counsel* made at the initial hearing on the motion to suppress.  The full statement at issue made by the court is:  "*The Defense* at the time conceded, uh, as much because those were the — all the facts that were available."  (Italics added.)

The discussion from the initial suppression hearing  (that the court is referring to above) is illuminating.  It shows that after the court had denied a continuance and granted the motion to suppress, the court had an exchange with the parties about how to proceed.  During that exchange, the court explained that it intended to dismiss unless the prosecution believed there was "other evidence" in the case that would allow it "to proceed." Defense counsel argued dismissal would be appropriate because Yasin's suppressed statements comprised "essentially . . .everything" in the case and there was no longer sufficient evidence to prove the charges.  Crucially, the trial court noted in response that defense counsel's evaluation of the remaining evidence was "not necessarily" accurate.  The prosecution then expressly disagreed with the defense, contending that the People might be able to proceed because "a lot of the evidence" against Brown was comprised of observations that were not subject to the suppression order.  The trial court, apparently having accepted the prosecution's representations, declined to dismiss the case and set the matter for trial.

On this record, I cannot conclude that the trial court understood the prosecution had a burden to show the People could not proceed without the suppressed evidence or that the

court made an independent determination that the case would have to be dismissed. In my view, the trial court's reference to statements and arguments defense counsel made during the original suppression hearing, which was held before any party had even brought *Ferrer* to the court's attention, does not show that the court evaluated the prosecution's continuance request under the standards we have articulated today.

Indeed, the only thing that appears to have changed between the suppression hearing and the hearing on the motion for reconsideration was the prosecution's representations about whether the case could continue: When faced with dismissal at the first hearing, the prosecution argued that it might be able to continue, but after identifying the *Ferrer* holding (which requires the court to grant a continuance if dismissal would otherwise result) the prosecution asserted that it could not proceed without the suppressed evidence. As noted, the trial court granted the continuance without ever asking the prosecution why its evaluation of the case had changed or otherwise inquiring about the state of the remaining evidence. In my view, the court's actions suggest that rather than making any independent determination of the issue, it may have granted the continuance based solely on the prosecution's representation that it would dismiss.[3]

---

[3] While noting that a presumption of correctness generally applies to judgments on appeal, the majority appears to agree that remand is appropriate when a reviewing court has announced a new legal standard. (See maj. opn., *ante*, at p. 30, fn. 7.) The majority insists, however, that today's opinion does nothing more than "approve" (*ibid.)* standards that were already articulated in *Ferrer, supra*, 184 Cal.App.4th 873. This conclusion is at odds with the parties' reading of that opinion.

Because I understand our decision today to clarify the legal standards that govern continuance requests in the context of suppression hearings, and because I do not believe we can discern from this record whether the trial court applied those standards here — indeed, if anything the record suggests it did not — I would reverse the judgment of guilt and remand the matter to the trial court with directions to hold a hearing as to whether the prosecution can satisfy its "burden . . . to show an inability to go forward without the evidence in dispute."[4]  (Maj.

---

The Attorney General explains that *Ferrer* does "not provide any specific guidance for determining when a denial of a continuance may result in a dismissal," while Brown's briefing before the Court of Appeal notes that the decision raises "fundamental uncertainties" regarding how trial courts should decide that question.  I agree with the parties.

Although the majority adopts the same "reasonably foreseeable" parlance as *Ferrer*, I find nothing in *Ferrer* directing that the prosecution has an initial burden to show the case "cannot be tried" (maj. opn., *ante*, at p. 27, italics omitted) without the challenged evidence.  Nor does *Ferrer* direct trial courts that they must make an independent assessment of the prosecution's representations about its ability to proceed.  Although the majority characterizes these requirements as mere "elaborat[ions]" (maj. opn., *ante*, at p. 30, fn. 7) on what was already said in *Ferrer*, I view them as addressing an issue *Ferrer* simply did not reach:  What standards should trial courts apply in assessing whether it is reasonably foreseeable that denial of a continuance will result in dismissal?

[4]  As the majority notes, while this appeal was pending, "the Legislature decriminalized the act of loitering for purposes of prostitution, the offense of which defendant was convicted.  (See Stats. 2022, ch. 86 (Sen. Bill No. 357), § 4, effective Jan. 1, 2023.)"  (Maj. opn., *ante*, at p. 31.)  Were we to reverse the judgment and remand, I would direct the trial court to consider whether this intervening legislation requires the People to

opn., at p. 1; see *People v. Jimenez* (1978) 21 Cal.3d 595, 609, overruled by *People v. Cahill* (1993) 5 Cal.4th 478 on another ground [where opinion clarified uncertainty in the law, reviewing court would not "presume[] that the trial court applied the correct standard in those cases in which the record is silent in this regard"]; *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 824 ["proper course" is to remand for application of "new" standard "to the facts of this case"].)

**GROBAN, J.**

**We Concur:**

**LIU, J.**
**EVANS, J.**

---

dismiss this case.  Under the majority's approach, however, Brown's judgment of conviction has now been affirmed, meaning that she must file a petition or application in the trial court (which will presumably require the assistance of counsel) requesting dismissal of her conviction. (See § 653.29, subds. (a), (b).)

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Brown

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 69 Cal.App.5th 15
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S271877
**Date Filed:** March 27, 2023

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Jesus Valencia, Jr.

_____

**Counsel:**

William M. Robinson, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William M. Robinson
Attorney at Law
95 South Market Street, Suite 570
San Jose, CA 95113
(408) 241-6171

Bridget Billeter
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3763